**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

DAVID RIVERA,
        *Defendant-Appellant.*

No. 10-50426

D.C. No.
2:08-cr-01201-
ODW-50

OPINION

Appeal from the United States District Court
for the Central District of California
Otis D. Wright, District Judge, Presiding

Argued and Submitted
August 2, 2011—Pasadena, California

Filed June 22, 2012

Before: Stephen Reinhardt and Marsha S. Berzon,
Circuit Judges, and Matthew F. Kennelly, District Judge.*

Opinion by Judge Berzon

*The Honorable Matthew F. Kennelly, District Judge for the U.S. District Court for Northern Illinois, sitting by designation.

7431

**COUNSEL**

David S. McLane, Kaye, McLane & Bednarski, LLP, Pasadena, California, for the appellant.

Andre Birotte, Jr., United States Attorney, Robert E. Dugdale, Criminal Division Chief, Christopher Brunwin (argued), Assistant United States Attorney, United States Department of Justice, Los Angeles, California, for the appellee.

**OPINION**

BERZON, Circuit Judge:

Defendant-Appellant David Rivera was convicted of possessing with intent to distribute 214.4 grams of actual methamphetamine. Defense counsel indicated that Rivera wanted his family members, including his wife and young son, present at the sentencing hearing. The district court, however, expressing displeasure at what it perceived as the manipulative use of Rivera's young son as a sentencing "prop," continued the sentencing hearing and ordered defense counsel to show up three days later with "[j]ust the people involved." We hold that Rivera's Sixth Amendment right to a public trial was violated by the district court's exclusion of his family members from the sentencing proceedings. Accordingly, we vacate Rivera's sentence and remand for re-sentencing.

**I**

Rivera was named in an eighty-six count indictment against seventy-nine members and associates of the Mongols motorcycle gang. The indictment charged racketeering, narcotics, weapons, and money-laundering offenses. Count Fifty-Three of the indictment charged Rivera and his brother, Ismael Rivera, with possessing with intent to distribute 214.4 grams of methamphetamine.

Pursuant to a written plea agreement, Rivera pleaded guilty to the act of transporting 214.4 grams of methamphetamine. The parties stipulated to a base offense level of thirty-four and a three-level reduction for Rivera's acceptance of responsibility. Both parties reserved the right to argue that the district court should adjust or depart from this offense level. The plea agreement contained a limited waiver of appeal, which stated in pertinent part:

> Defendant gives up the right to appeal any sentence imposed by the Court, and the manner in which the

sentence is determined, provided that (a) the sentence is within the statutory maximum specified above and is constitutional, and (b) the Court imposes a sentence within or below the range corresponding to a total offense level of 31, and the applicable criminal history category as determined by the Court.

At the change of plea hearing, Rivera testified that he read, signed, and understood the plea agreement.

On August 24, 2010, before conducting the initial sentencing hearing, the district judge announced that he intended to comply with the parties' requests to have their sentencing position papers filed under seal and also intended to seal the courtroom and the transcripts of the proceeding. Rivera, through counsel, requested that his family members, including his seven-year-old son, be present, but asked to discuss certain matters at sidebar. The district judge responded that he himself thought the hearing ought to be closed, but that Rivera could do as he wished.

The hearing went forward, and defense counsel presented the reasons why, in his view, the level thirty-one Guidelines sentence was too high. Rivera, his lawyer maintained, was entitled to a minimal role reduction because he was substantially less culpable than his co-defendants; a lower sentence was appropriate because Rivera had a low IQ and was thus "subject to undue influence" by his older brother; and leniency was appropriate in light of Rivera's family ties and post-arrest conduct. After concluding his litany of rationales for a lowered sentence, defense counsel pleaded with the court to "look at this individual and give him a chance for his future . . . ."

The district judge responded:

A number of courts have taken a chance on him. There has been repeated arrests and grants of proba-

tion, and he is undeterred. He immediately goes out and continues to engage in criminal activity. And that is the part that is really troublesome. Continues to engage in this lifestyle, get arrested, brought before the Court, admit the guilt, is granted probation, goes back out and does it again because nothing has ever happened. Nothing has ever happened to Mr. Rivera to encourage him to change his life.

. . .

And I will have to tell you something, and this is almost universal with all of the people involved in this case, they spend all of their time, you know, out in the streets engaged in an awful lot of unsocial activity, some of it criminal, but, then, on this day, on this sentencing day, then all the family comes rolling in, family that they should have been spending time with as opposed to associating with these unsavory characters, and I find it particularly distasteful when the young children are used.

This is not the place. This is not the time, and the Court is not impressed. Matter of fact, I take a very, very dim view of using children in this way.

. . .

And, you know, I have delivered this message before with the hope that it would circulate and be communicated throughout the defense bar, but it persists. One day eight children under the age of 6 were paraded here in this case [apparently referring to a different defendant's sentencing proceeding]. That is just shameful, but I'm sorry.

Defense counsel explained that he would not have brought Rivera's young child if he had known the court's views on the

matter, and resumed his argument for a minor role adjust-
ment. The district judge, however, remained upset and, noting
that the defense had indicated its willingness to continue sen-
tencing if the court wanted more time to digest the sentencing
papers, ordered the hearing continued and the courtroom
cleared. Before the proceeding concluded, the district judge
stated his intention to reconvene the sentencing proceedings
a few days later, with "[j]ust the people involved."

The sentencing hearing resumed on August 27, 2010. This
time, no family members were present. After defense counsel
stated his appearance for the record, indicated Rivera's pres-
ence, and introduced his investigator, the district judge
remarked: "This is the way a courtroom ought to look. All
right. Let's pick up from where we left off." The court
decided that Rivera was not entitled to a minor role reduction,
and, after considering the relevant criteria, imposed a sentence
of 97 months' imprisonment. Rivera appeals his sentence.

## II

Rivera argues that the sentencing procedure in this case
violated the Fifth and Sixth Amendments to the United States
Constitution. Before turning to the merits of Rivera's consti-
tutional challenges, we briefly address whether Rivera waived
his right to appeal the district court's alleged violation of his
constitutional rights.

## A.  The Appeal Waiver

Whether a criminal defendant has waived his right to
appeal is reviewed de novo. *United States v. Bibler*, 495 F.3d
621, 623 (9th Cir. 2007). Unless certain exceptions apply, an
appeal waiver is enforceable if the defendant knowingly and
voluntarily waives his rights, and the language of the waiver
covers the grounds raised on appeal. *Id.* at 623-24.[1]

---

[1]We have recognized an "illegal sentence" exception to the enforcement
of appeal waivers—i.e., we will not enforce an appeal waiver where the

According to the terms of the appeal waiver in Rivera's plea agreement, Rivera waived "the right to appeal any sentence imposed by the [district court], and the manner in which the sentence is determined, provided that (a) the sentence is within the statutory maximum specified above *and is constitutional* . . . ." (Emphasis added). Both Rivera and the government—the parties to the plea agreement—have assumed, in their respective filings before this Court and at oral argument, that Rivera's appeal waiver did not preclude him from raising constitutional challenges to the manner in which his sentence was imposed.

Specifically, Rivera's brief states that "the plea agreement expressly allows for appealing an unconstitutional sentence, so if the court imposed the sentence on Mr. Rivera in violation of the Constitution, Mr. Rivera can appeal that sentence." The government accepts this premise, arguing, with respect to the public trial issue, only that Rivera's "sentence is not unconstitutional because there was no Sixth Amendment violation." Similarly, the government contends, with respect to Rivera's due process challenge, only that "[t]he district court did not violate [Rivera's] right to due process." By contrast, the government does argue that the appeal waiver covered the contention that the sentence was invalid because of a failure properly to consider sentencing disparity, noting, inter alia, that Rivera "has [not] claimed a constitutional violation with respect to alleged sentencing disparity." Although the government ultimately asks for the entire appeal to be dismissed pursuant to the appeal waiver, it does so, with respect to the constitutional issues raised, on the ground that they lack merit, not on the ground that they may not be considered.

---

sentence at issue "exceeds the permissible statutory penalty for the crime or violates the Constitution." *Id.* at 624. We have no occasion to consider whether this exception applies here, because, as discussed below, the language of the agreement and the parties' understanding of it, as well as the government's failure to argue that the appeal waiver applies to Rivera's constitutional challenges, suffice to resolve the issue before us.

**[1]** The parties' understanding that the appeal waiver does not include constitutional challenges to the manner in which Rivera's sentence was imposed rests on a plausible reading of the plea agreement. The affirmative coverage of the appeal waiver includes "the manner in which the sentence is determined," so it is sensible to understand the exception for a sentence that "is [not] constitutional" to mirror the affirmative coverage of the waiver and so to include an unconstitutionally imposed sentence, one imposed in violation of the Fifth and Sixth Amendments. Because ambiguities in the plea agreement must be construed in the defendant's favor, *see, e.g.*, *United States v. Charles*, 581 F.3d 927, 931-32 (9th Cir. 2009), we agree with the parties' interpretation of the appeal waiver as not covering constitutional challenges to the manner of imposing the sentence.[2]

## B.  Rivera's Sixth Amendment Right to a Public Trial

**[2]** Turning to the merits of Rivera's Sixth Amendment challenge, we must determine: (1) whether the Sixth Amendment right to a public trial attaches to sentencing proceedings; if so, (2) whether the closure at issue was trivial, and therefore exempt from Sixth Amendment analysis; if not, (3) whether Rivera forfeited his public trial right; if not, (4) whether the closure violated Rivera's public trial right; and, if so, (5) what remedies are available. We address each issue in turn.

---

[2]Furthermore, because the government argues only the merits of the Fifth and Sixth Amendment issues and does not maintain that the issues may not be considered, it has, in any event, waived any reliance on the appeal waiver with regard to those issues. *See, e.g.*, *United States v. Garcia-Lopez*, 309 F.3d 1121, 1123 (9th Cir. 2002); *United States v. Doe*, 53 F.3d 1081, 1082-83 (9th Cir. 1995); *see also United States v. Jacobo Castillo*, 496 F.3d 947, 957 (9th Cir. 2007) (en banc) (holding that a valid appeal waiver contained in a plea agreement does not divest this Court of jurisdiction to hear the defendant's appeal, and so is subject to waiver). Thus, we would retain authority to reach the merits of Rivera's appeal even if the waiver's express terms did cover the constitutional challenges presented here.

*1. The right to a public sentencing.*

"Although the Sixth Amendment refers to a 'public trial,' the right encompasses more than the trial itself," extending "to those hearings whose subject matter involve[s] the values that the right to a public trial serves." *United States v. Waters*, 627 F.3d 345, 360 (9th Cir. 2010) (alteration in original) (citation and internal quotation marks omitted). "Those values are: (1) to ensure a fair trial, (2) to remind the prosecutor and judge of their responsibility to the accused and the importance of their functions, (3) to encourage witnesses to come forward, and (4) to discourage perjury." *Id.* (quoting *United States v. Ivester*, 316 F.3d 955, 960 (9th Cir. 2003)).

These values apply with as much force to sentencing proceedings as to the trial itself. First, the interest in fair proceedings indisputably extends to sentencing. *See, e.g.*, *United States v. Jordan*, 256 F.3d 922, 926 n.2 (9th Cir. 2001). Second, the judge and prosecutor continue to bear grave responsibilities, both to the accused and to the broader community, during sentencing proceedings. *See, e.g.*, *Williams v. Oklahoma*, 358 U.S. 576, 585 (1959); *United States v. Saling*, 205 F.3d 764, 767 (5th Cir. 2000). Finally, the values of encouraging witnesses to come forward and discouraging perjury remain salient at sentencing, because the parties may present witnesses at sentencing. *See* Fed. R. Crim. P. 32(i)(2).

The application of these values to sentencing is confirmed by our cases regarding the First Amendment right to access criminal proceedings. For example, in *CBS, Inc. v. United States District Court*, 765 F.2d 823 (9th Cir. 1985), which concerned a news organization's motion to access sealed documents related to a criminal defendant's Federal Rule of Criminal Procedure 35 motion to reduce his sentence, we found "no principled basis for affording greater confidentiality to post-trial documents and proceedings than is given to pretrial matters." *Id.* at 825. Rather, we held, "[t]he primary justifications for access to criminal proceedings, first that

criminal trials historically have been open to the press and to the public, and, second, that access to criminal trials plays a significant role in the functioning of the judicial process and the governmental system, apply with as much force to post-conviction proceedings as to the trial itself." *Id.* (citation omitted); *see also United States v. Biagon*, 510 F.3d 844, 848 (9th Cir. 2007); *United States v. Lewis*, 424 F.3d 239, 248 (2d Cir. 2005).

Of course, our First Amendment right of access cases do not directly control here, because this case concerns a criminal defendant's Sixth Amendment right to a public trial, and "[t]he extent to which the First and Sixth Amendment public trial rights are coextensive is an open question." *Presley v. Georgia*, 130 S. Ct. 721, 724 (2010) (per curiam). As the Supreme Court observed in *Waller v. Georgia*, 467 U.S. 39 (1984), however, precedents concerning the reach of the public's First Amendment right of access may inform the scope of the defendant's Sixth Amendment right to a public trial, because "there can be little doubt that the *explicit* Sixth Amendment right of the accused is no less protective of a public trial than the *implicit* First Amendment right of the press and public." *Id.* at 46 (emphasis added).

It is "not necessary here to speculate whether or in what circumstances the reach or protections of one might be greater than the other," because "there is no legitimate reason," in the context of a sentencing hearing, "to give one who asserts a First Amendment privilege greater rights to insist on public proceedings than the accused has." *Cf. Presley*, 130 S. Ct. at 724 (discussing juror selection proceedings). The public trial guarantee was, after all, "created for the benefit of the defendant," and "[t]here could be no explanation for barring the accused from raising a constitutional right that is unmistakably for his or her benefit." *Id.* (quoting *Gannett Co. v. DePasquale*, 443 U.S. 368, 380 (1979)) (citation and internal quotation marks omitted).

**[3]** We have already held that the First Amendment right of access applies to sentencing proceedings. *See Biagon*, 510 F.3d at 848; *accord Lewis*, 424 F.3d at 248. Because we see no reason to give the public a greater right to insist on public proceedings than the individual for whose benefit the public trial right was created—the criminal defendant—we hold that the Sixth Amendment right to a public trial attaches at sentencing proceedings.

### 2. *The closure was not trivial.*

The right to a public trial entitles a criminal defendant "at the very least . . . to have his friends, relatives and counsel present, no matter with what offense he may be charged." *In re Oliver*, 333 U.S. 257, 272 (1948); *see Braun v. Powell*, 227 F.3d 908, 917 (7th Cir. 2000); *Vidal v. Williams*, 31 F.3d 67, 69 (2d Cir. 1994). Nonetheless, in some circumstances, exclusion of members of the public from a judicial proceeding does not implicate the constitutional guarantee. *See United States v. Perry*, 479 F.3d 885, 890 (D.C. Cir. 2007) (collecting cases). We have held, for example, that the exclusion of "spectators during the brief mid-trial questioning of the jurors to determine if they were concerned for their safety" is too trivial a closure to violate the Sixth Amendment. *Ivester*, 316 F.3d at 959-60 (citing *Peterson v. Williams*, 85 F.3d 39, 43 (2d Cir. 1996)). "To determine whether a closure was too trivial to implicate the Sixth Amendment guarantee, we must determine whether the closure involved the values that the right to a public trial serves." *Id.* at 960 Those values, as we have explained, include: ensuring fair proceedings; reminding the prosecutor and judge of their grave responsibilities; discouraging perjury; and encouraging witnesses to come forward. *See id.*

The government asserts that the district court excluded only Rivera's seven-year-old son from the proceedings. The gov-

ernment contends that this exclusion was too trivial to implicate Rivera's Sixth Amendment public trial right. We disagree.[3]

The presence of the public at sentencing reminds the participants, especially the judge, that the consequences of their actions extend to the broader community. Friends and family members, especially a defendant's young children, are particularly effective in this regard, because they are the individuals most likely to be affected by the defendant's incarceration. *Cf.* U.S.S.G. § 5H1.6 (stating that "family ties and responsibilities are not ordinarily relevant" in deciding whether to depart below a Guidelines sentence, but application notes authorize departures when the defendant's sentence "will cause a substantial, direct, and specific loss of essential caretaking"). Moreover, a child's ingenuousness may have an intensely sobering effect on the responsible adults, including on the person being sentenced. Because the closure at issue in this case concerned sentencing proceedings, the absence of Rivera's young child frustrated Sixth Amendment values—particularly, the value of reminding the participants of the importance of the occasion.

Furthermore, the district judge did not, in fact, exclude only Rivera's child from the proceedings; he excluded all of the family members Rivera wished to have present. Here is the exchange that occurred when the district judge indicated his desire to continue the August 24 sentencing hearing:

> District Court: You made, in your papers, I guess the first page, you made the suggestion that if the Court

---

[3]In pressing its argument, the government relies on *Perry*, in which the D.C. Circuit held that an eight-year-old child could be excluded from his father's public *trial* because, considering the purposes of the Sixth Amendment, his exclusion was trivial in the circumstance presented. 479 F.3d at 890-91. Here, we need only decide whether the exclusion of Rivera's child from his father's *sentencing* was trivial, and that is the only issue we decide. Our silence on the views expressed by the D.C. Circuit should not be taken as indicating any agreement with its decision or its rationale.

wanted more time to digest your papers, then you would be willing to continue this. I want to continue this. I want to clear this courtroom. I am really upset about this display. Okay.

Defense Counsel: Yes, your honor.

District Court: I am going to reconvene this sentencing just with the adults without this manipulation because I don't want to take it out on your client, this charade.

Defense Counsel: Yes, your honor.

. . .

Defense Counsel: And no family, just my client.

District Court: Forget the manipulation. It doesn't work well with me.

Defense Counsel: Your Honor, if I knew this—

District Court: Listen to me. Just don't. Okay. 1:30, Friday.

Defense Counsel: Yes, your honor.

District Court: Just the people involved. Okay.

Defense Counsel: Yes your Honor. Thank you.

Although the district judge, at one point, indicated that he intended to "reconvene this sentencing just with the adults," he had originally expressed a preference for a closed courtroom; said, without qualification, that he "want[ed] to clear th[e] courtroom";[4] and subsequently stated—in response to

_____

[4]The phrase "clear the courtroom" is regularly used in reference to the closure of proceedings. *See, e.g.*, *Biagon*, 510 F.3d at 846. When a partial

defense counsel's attempt at clarification ("And no family, just my client")—that counsel should "[f]orget the manipulation" and that the proceeding should include "[j]ust the people involved." When the proceedings resumed on August 27, the only people present were the judge, the prosecutor, defense counsel, defense counsel's investigator, and Rivera himself. Observing the cleared courtroom, the district judge remarked: "This is the way a courtroom ought to look." Taken together, the district judge's comments evince a definite intent fully to "clear the courtroom," thereby excluding all of Rivera's family members from the proceedings.

The government alternatively contends that the closure was trivial, because Rivera's family members were excluded only from the August 27 sentencing hearing, which was fairly brief —it lasted about thirty-five minutes.[5] That a closure is particularly brief in duration may support the conclusion that it does not implicate the values served by the defendant's right to a public trial. *See Ivester*, 316 F.3d at 960; *Peterson*, 85 F.3d at 41 (holding that a closure lasting twenty minutes, during which the defendant testified, was too insignificant to violate the defendant's Sixth Amendment rights). In both *Ivester* and *Peterson*, however, other factors strongly supported the conclusion that the closure did not implicate Sixth Amendment public trial concerns.

*Peterson*, for instance, noted that the closure at issue was not only brief but inadvertent, and observed that "the public

closure is intended, the phrase is usually qualified to indicate which persons may remain. *See, e.g.*, *Garcia v. Bertsch*, 470 F.3d 748, 750 (8th Cir. 2006) ("[T]he State's attorney requested to clear the courtroom of media and anyone other than the families of Garcia and the victim."); *United States v. Kupau*, 781 F.2d 740, 742 (9th Cir. 1986) ("The district judge also announced that he would clear the courtroom of all but the jury and Lui for the playing of the tapes, which he did.").

[5]The earlier August 24 sentencing hearing lasted approximately fifty minutes.

may not have missed much of importance as a result of the accidental closure, since just about all of the defendant's testimony that was relevant was repeated, soon after he testified, as part of the defense counsel's summation." *Id.* at 43. The Second Circuit explained that it was the combination of those factors in the context of the case at hand, not any one of them alone, that underlay the conclusion that Peterson's Sixth Amendment rights were not breached. *See id.* at 44. Similarly, *Ivester* concluded that the closure at issue "was so trivial as to not implicate [the defendant's] Sixth Amendment rights" in large part because the closure—which lasted only a few moments, as the district judge questioned the jurors to determine whether they felt safe—was "an administrative jury problem" that infected neither the witnesses' testimony nor counsel's arguments to the jurors. *See* 316 F.3d at 960.

**[4]** In this case, although the hearing from which Rivera's family members were excluded was not particularly lengthy, the government does not identify any factors other than brevity to support the triviality characterization. Indeed, several considerations support the opposite conclusion that the closure at issue here was especially significant. For example, *Braun* observed that, typically, habeas relief is granted or a new trial required only for "substantial exclusions," and identified two specific categories of substantial closure capable of justifying such relief: Where "the courtroom was totally closed to the general public at some critical juncture in the proceedings; or, in other cases, [where] the court excluded a friend or relative of the defendant." 227 F.3d at 917 & n.6 (collecting cases). The closure at issue here falls under both categories.

First, the district court excluded Rivera's family members from the August 27 hearing. Our sister circuits have interpreted the Supreme Court's statement in *Oliver*—that the defendant is entitled to have "at the very least . . . his friends, *relatives* and counsel present" during criminal proceedings, *Oliver*, 333 U.S. at 272 (emphasis added)—as expressing

"special concern for assuring the attendance of family members of the accused." *Vidal*, 31 F.3d at 69; *see also Guzman v. Scully*, 80 F.3d 772, 776 (2d Cir. 1996) ("The exclusion of courtroom observers, *especially a defendant's family members* and friends, even from part of a criminal trial, is not a step to be taken lightly.") (emphasis added). The exclusion of Rivera's relatives thus implicates Sixth Amendment values more directly than the exclusion of the general public.

Second, during the hearing, matters of vital importance were discussed and decided: The court computed Rivera's Sentencing Guideline range, heard closing statements from defense counsel and a personal statement from Rivera, weighed the § 3553(a) factors, and imposed its sentence. The Supreme Court has long recognized "the critical nature of sentencing in a criminal case," *Mempa v. Rhay*, 389 U.S. 128, 134 (1967), and the August 27 hearing in this case is no exception. Given the vital importance of the material discussed at the hearing, and the deliberate exclusion of Rivera's family members from that proceeding, the closure at issue in this case is nothing like those at issue in *Ivester* and *Peterson*.

**[5]** We conclude that the district court's exclusion of Rivera's family members from the August 27 hearing implicated important values served by the Sixth Amendment. Most saliently, the district judge imposed Rivera's sentence free from the watchful eyes of Rivera's family members, and thus without the most significant reminders of the importance of the court's sentencing function and the gravity of its actions. The closure was therefore not trivial.

### 3. *Rivera did not forfeit his right to a public trial.*

The government asserts that Rivera forfeited his right to a public trial by failing to object to the district court's closure order. Although the right to a public trial provides benefits to society as a whole, *see Oliver*, 333 U.S. at 270 n.24, a defendant may nevertheless forfeit the right, either by affirmatively

waiving it or by failing to assert it in a timely fashion. *See Levine v. United States*, 362 U.S. 610, 619 (1960); *see also Peretz v. United States*, 501 U.S. 923, 936 (1991) (citing *Levine*); *Freytag v. Comm'r*, 501 U.S. 868, 895-96 & n.2 (1991) (Scalia, J., concurring in part and concurring in the judgment) (citing *Levine*).

In *Levine*, a grand jury proceeding gave rise to a criminal contempt proceeding when Levine, a witness before a federal grand jury, persisted in refusing to answer the questions put to him. 362 U.S. at 611-12. After Levine refused to answer the questions, government counsel, Levine, and Levine's counsel went to the district court judge for his assistance in determining how to proceed. *Id.* at 612. The district judge directed Levine to appear again before the grand jury and answer the questions put to him. *Id.* When Levine persisted in his refusal to answer the grand jury's questions, the judge cleared the courtroom of everyone except the grand jury, government counsel, Levine, and Levine's counsel, and proceeded to question Levine himself. *Id.* at 612-13. When Levine still refused to answer the questions, the district judge asked why Levine should not be found in contempt "committed in the physical presence of the Judge." *Id.* (internal quotation marks omitted). After Levine's counsel gave various answers, none of which referenced the exclusion of the public from the criminal contempt proceedings, Levine was adjudged in contempt and sentenced to one year's imprisonment. *Id.* at 613-14.

The Supreme Court held that Levine "had no right to have the general public present while the grand jury's questions were being read," but that the traditional need for secrecy in grand jury proceedings evaporated when Levine was questioned by the district judge. *Id.* at 618. At that point, the Court noted, Levine could have asked that "the courtroom be opened so that the act of contempt, that is, his definitive refusal to comply with the court's direction to answer the previously propounded questions, and the consequent adjudica-

tion and sentence might occur in public." *Id.* Because neither Levine nor his counsel made a contemporaneous request to open the proceedings, however, the Court concluded that any public trial challenge was forfeited. *See id.* at 619-20. In other words, the Court held, "the continuing exclusion of the public" in that case was "not to be deemed contrary" to the right of public trial "without a request having been made to the trial judge to open the courtroom at the final stage of the proceeding, thereby giving notice of the claim" and affording the district judge an opportunity to address it. *Id.* at 619.[6]

The government argues that Rivera similarly forfeited his public trial right by not objecting when the district court expressed its intention to reconvene the proceeding three days later without family members present. But defense counsel had already done precisely what *Levine* requires. At the beginning of the August 24 hearing, when the district judge first expressed his intention to seal the proceedings, defense counsel informed the court that Rivera wished to have his family present.

The exchange proceeded as follows:

> District Court: First, both the government and defense have requested that their position papers be filed under seal, and indeed they will be. This transcript will also be sealed and as will the courtroom.
>
> Defense Counsel: Well, these are family members so we are asking that they be present, but if I could just talk to the government for one second, your Honor.

---

[6]The Sixth Amendment protects "all criminal prosecutions," but not contempt proceedings. *See id.* at 616 (citing *Ex parte Terry*, 128 U.S. 289, 306-10 (1888)). Thus, technically speaking, Levine's claim derived from the Fifth Amendment's Due Process Clause. The Court's due process analysis, however, expressly relied on the Sixth Amendment's public trial principles, *see id.*, and the Court has subsequently cited *Levine* in reference to the public trial right, *see, e.g.*, *Peretz*, 501 U.S. at 936.

District Court: Sure.

(Counsel confer)

Defense Counsel: Your honor, there may be particular matters that we may ask to approach sidebar on.

District Court: That you don't even want the family to hear?

Defense Counsel: No, your honor.

District Court: I think it should be closed, but do what you wish.

Defense Counsel: No. I understand what the Court is saying, but I think Mr. Rivera—I talked about this a lot with Mr. Rivera whether the courtroom should be completely closed or have his family present. *And he wants his family here in the courtroom for support,* but he did indicate to me and there are certain matters that we want to discuss at sidebar.

District Court: Right.

Defense Counsel: If that is okay with the Court.

District Court: It is. Let's try to avoid it anyway.

(Emphasis added).

**[6]** Although defense counsel did not reiterate these concerns when the district court subsequently announced its decision to exclude Rivera's family members, he was not required to do so. Under Rule 51 of the Federal Rules of Criminal Procedure,[7] we have held that a defendant who has already made a

---

[7]Rule 51 of the Federal Rules of Criminal Procedure covers the means by which a party may preserve a claim of error for appellate review.

request to the district court, and argued in favor of it, does not need to take an exception to the court's decision after it has been rendered. *United States v. Mancinas-Flores*, 588 F.3d 677, 686 (9th Cir. 2009); *see also United States v. Bartlett*, 567 F.3d 901, 910 (7th Cir. 2009) ("[W]hen an issue is argued before the judicial ruling, counsel need not take exception once the court's decision has been announced.").[8] That logic applies here: Having already expressed Rivera's desire for his family to be present and explained the reasons for that request, defense counsel did not have to ask the court to reconsider its subsequent decision to close the proceedings, nor was defense counsel required to point out possible errors in the decision after it had already been made. *See Mancinas-Flores*, 588 F.3d at 680, 686.

The government alternatively contends that defense counsel affirmatively waived Rivera's public trial right when he stated that he would not have had Rivera's child present at the proceedings "[i]f [he] had known the Court's feelings and views on this matter."[9] Defense counsel's statements, however, must be considered in light of the context in which they were made.

**[7]** District courts have wide discretion to determine an appropriate sentence, and their decisions enjoy considerable deference on appeal. *See, e.g.*, *United States v. Fitch*, 659 F.3d 788, 796 (9th Cir. 2011); *United States v. Carty*, 520 F.3d 984, 990-94 (9th Cir. 2008) (en banc). Indeed, where the defendant has executed an appeal waiver as part of his plea

---

[8]"[A] party does not 'object' to a court's ruling; rather, when a party tries to inform the court that a ruling it has already made is erroneous, it is taking an 'exception' to the ruling." *Mancinas-Flores*, 588 F.3d at 686 (citing *Bartlett*, 567 F.3d at 910).

[9]Several of our sister circuits have held that defense counsel can forfeit the public trial right on the defendant's behalf. *See, e.g., United States v. Hitt*, 473 F.3d 146, 155 (5th Cir. 2006); *Martineau v. Perrin*, 601 F.2d 1196, 1200 (1st Cir. 1979). We need not reach this issue, however. Even if defense counsel could forfeit Rivera's right to a public trial, he did not do so here.

agreement, as Rivera had, the district court's sentencing decisions are often absolutely final. It is therefore to be expected that defense counsel pleading for a lenient sentence will be compliant with the district court's directives, whether they be direct or implicit, for, at sentencing, the district judge alone holds the defendant's fate in the balance.

In this case, the district judge pointedly criticized, at length, the presence of Rivera's family members, and especially Rivera's seven-year-old son, as "shameful" and manipulative, and stated that he had earlier communicated to the relevant bar his policy precluding the attendance of young children at sentencing. Defense counsel responded: "Well, your Honor, I appreciate what the Court is saying. If I had known the Court's feelings and view on the matter, we wouldn't have had the young child here. I didn't know that, your Honor." Defense counsel thus explained only that he would not have deliberately disobeyed the district court's previously announced policy had he known of it. He did not in any way indicate that he affirmatively consented to the exclusion of Rivera's child.[10]

Finally, the government maintains that Rivera forfeited his right to a public trial because "he never sought a public sentencing," given that he filed his sentencing papers under seal, sought to exclude the general public, and asked to bring certain matters up at sidebar. This third forfeiture argument is no more persuasive than the first two.

To begin, nothing in the record supports the government's contention that Rivera affirmatively "sought to exclude the public." At the beginning of the August 24 hearing, the dis-

---

[10]Moreover, even if defense counsel had consented to the child's exclusion, the district court, as previously discussed, excluded *all* of Rivera's relatives, not just his child. Neither Rivera nor his attorney gave any indication that they affirmatively consented to the district court's exclusion of Rivera's entire family from the sentencing proceedings.

trict judge indicated that "both the government and defense have requested that their position papers be filed under seal." The district judge then stated that the sentencing transcript "will also be sealed and as [sic] will the courtroom." Although Rivera did file his sentencing papers under seal and ask to bring certain matters up at sidebar during the sentencing hearing, he did not, as far as the record shows, affirmatively seek to exclude the public from the proceedings.

**[8]** Second, a defendant's consent to, or pursuit of, a partially closed proceeding does not automatically forfeit in its entirety the right to a public trial. As discussed above, the Sixth Amendment public-trial guarantee was "created for the benefit of the defendant." *Presley*, 130 S. Ct. at 724 (quoting *Gannett Co.*, 443 U.S. at 380) (internal quotation marks omitted). Because the defendant is the intended beneficiary of the right, he is not precluded from exercising the right selectively, as by consenting to, or even seeking, the exclusion of the general public from proceedings while reserving the right to have certain individuals (e.g., friends, family, and counsel) present. Moreover, the purposes served by the forfeiture doctrine—notifying the trial court of the defendant's Sixth Amendment public trial claim and providing the court an opportunity to address it, *see Levine*, 362 U.S. at 619—would not be advanced by forcing the defendant into an all-or-nothing choice between a totally public or totally private proceeding. In light of these considerations, we conclude that Rivera did not forfeit his Sixth Amendment right to a public trial.

### 4. The closure violated Rivera's right to a public trial.

**[9]** *Waller* laid out the framework for determining whether a closure of proceedings violates a defendant's Sixth Amendment public trial right: "The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing

court can determine whether the closure order was properly entered." *Waller*, 467 U.S. at 45 (quoting *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984)) (internal quotation marks omitted).

In *Sherlock*, we held that the *Waller* framework applies only to *total* closures—i.e., where "*all* persons other than witnesses, court personnel, the parties and their lawyers [a]re excluded for the duration of the hearing," *Woods v. Kuhlmann*, 977 F.2d 74, 76 (2d Cir. 1996). *Sherlock*, 962 F.2d at 1357. A less rigorous standard applies where a partial closure is at issue: A partial closure is justified where "the trial judge had a substantial reason for the closure," and where "the closure was narrowly tailored to exclude spectators only to the extent necessary to satisfy the purpose for which it was ordered." *Id.* Additionally, there are three procedural requirements that must be satisfied before a trial court may order a partial closure: (1) the court must hold a hearing on the closure motion;[11] (2) the court must make factual findings to support the closure; and (3) the court must consider reasonable alternatives to closing the courtroom. *Id.* at 1358-59.

We need not decide whether the closure at issue here was total or partial, because, substantively, it violated Rivera's public trial right under either standard. A number of important interests have been recognized as justifying closure: e.g., protecting a witnesses's dignity in a rape trial; protecting witnesses from fear of testifying; and preventing the courtroom from descending into chaos. *See id.* at 1356 (collecting cases).

[10] A district judge's displeasure over the "manipulative" presence of family members at sentencing does not rise to the level of a substantial interest. The district court here did not suggest that the family members present, including the child

---

[11]Where "First Amendment concerns are not raised, the hearing requirement is met when the court gives the defendant the right to be heard." *Id.*

or children, were in any way disruptive. Instead, the only interest identified for closing the courtroom was eliminating "manipulation." That asserted interest is directly at odds with one of the purposes of the public trial protection—namely, to "remind the prosecutor and judge of their responsibility to the accused and the importance of their functions," *Waters*, 627 F.3d at 360.

As previously discussed, the presence of family at sentencing is a way of bringing home to the participants at the hearing, including the judge, that the impact of the sentence will be not only on the defendant but also on members of his family. Also, that family members were willing to come helps to confirm the defendant's community connections and support, which could have an impact on the district court's determination of his likely success in avoiding criminal behavior in the future. That the district court characterized these implicit messages as "manipulative" was a way of saying that it preferred to dispense with the important reminder of judicial responsibility to the community in the exercise of its functions, a reminder at the core of the public trial right.

**[11]** As the "manipulation" interest asserted is inconsistent with the values underlying the Sixth Amendment public trial right, it cannot justify either a total or partial closure. We therefore conclude that the district court's closure of the sentencing proceedings violated Rivera's Sixth Amendment right to a public trial.

*5. Rivera is entitled to a new sentencing proceeding, which his family members should be allowed to attend.*

**[12]** Because a criminal defendant need not "prove specific prejudice in order to obtain relief for a violation of the public-trial guarantee," *Waller*, 467 U.S. at 49, we turn directly to the remedial question. The remedy for a Sixth Amendment violation "should be appropriate to the violation." *Id.* at 50. In this case, the appropriate remedy is clear: On remand, the district

court should protect Rivera's Sixth Amendment rights by allowing his family members to attend the new sentencing proceedings. *See id.* at 50 (remanding for "a new, public suppression hearing").

"Although we generally remand for resentencing to the original district judge, we remand to a different judge if there are unusual circumstances." *United States v. Quach*, 302 F.3d 1096, 1103 (9th Cir. 2002) (citation and internal quotation marks omitted). To determine whether reassignment is appropriate, we consider:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving appearance of fairness.

*Id.* (citation omitted). "The first two of these factors are of equal importance, and a finding of one of them would support a remand to a different judge." *Id.* (citation and internal quotation marks omitted).

**[13]** We have no reason to question the district judge's ability to proceed impartially. Nonetheless, we conclude that reassignment is advisable to preserve the appearance of justice. The district judge in this case expressed strong views about Rivera's alleged "manipulative" use of his family members during proceedings. Indeed, the judge continued the August 24 proceedings precisely because he was concerned that he might take his frustrations out on Rivera. In view of the district judge's comments, the interest in preserving the appearance of justice outweighs any duplication of effort. *See United States v. Reyes*, 313 F.3d 1152, 1160 (9th Cir. 2002).

We accordingly direct that the case be reassigned to a different judge for re-sentencing.[12]

## III

For the foregoing reasons, we **VACATE** Rivera's sentence and **REMAND** for new sentencing proceedings in accordance with this opinion.

---

[12]Rivera also contends that the district court sentenced him on the basis of materially false facts, in violation of the Fifth Amendment's Due Process Clause. To succeed on a due process claim involving a sentencing court's consideration of certain evidence, a defendant "must establish the challenged information is (1) false or unreliable, and (2) demonstrably made the basis for the sentence." *United States v. Vanderwerfhorst*, 576 F.3d 929, 935-36 (9th Cir. 2009) (citation and internal quotation marks omitted). Because Rivera has not established that his sentence was demonstrably based on any false or unreliable information, his due process challenge fails.