Filed 11/30/21  P. v. Poe CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br>v.<br>MARK DAVID POE,<br>　　　Defendant and Appellant. | A160102<br><br>(Solano County<br>Super. Ct. No. FCR340945) |

After a jury trial Mark David Poe was convicted of committing domestic violence on his former spouse. Conducting the sentencing hearing during the COVID-19 pandemic, the trial court barred the public—including Poe's family—from the courtroom. Poe's sole claim on appeal is that his right to a public trial was violated by that order. We disagree and affirm.

## BACKGROUND

Poe's claim is limited to the circumstances of the sentencing hearing and does not identify any trial errors; therefore, we recite the procedural, and omit the factual, history. An information alleged that Poe inflicted corporal injury on his former spouse (Penal Code[1] § 273.5, subd. (a); count one), assaulted her with force likely to produce great

---

[1] All statutory references are to the Penal Code.

1

bodily injury (GBI) (§ 245, subd. (a)(4); count two) and, as to both counts, inflicted GBI on the domestic violence victim (§ 12022.7, subd. (e)). The information included three prior prison term enhancements (§ 667.5, subd. (b)), which the court dismissed on the People's motion. On March 2, 2020, the jury found Poe guilty of both counts and found the infliction of GBI allegations to be true.

The court conducted a sentencing hearing on March 27, 2020. The court received and considered the presentence report, the People's sentencing memorandum in aggravation, and Poe's letters in support of his request for felony probation. Relevant to this appeal, at the outset of the hearing, Poe's counsel advised the court Poe's "family is in the hallway" and asked to bring them in. The court replied, "No, I'm not going to allow anyone in." Poe's counsel responded: "Even the spouse, your Honor?" The court said, "No," to which counsel replied, "Okay." The issue was not addressed further until Poe's counsel argued in support of probation and said: "[H]is wife . . . has been here at every court date since I can imagine and is waiting anxiously outside."

The court denied probation and sentenced Poe to the three-year midterm for count one and the four-year midterm for the section 12022.7, subdivision (e) enhancement, for a seven-year prison term. Pursuant to section 654, the court stayed count two and the 12022.7, subdivision (e) enhancement, and did not impose sentence.

Poe filed a timely notice of appeal.

## DISCUSSION

### I. The trial court did not violate Poe's right to a public trial.
#### Legal Principles

"Every person charged with a criminal offense has a constitutional right to a public trial, that is, a trial which is open to the

2

general public at all times. (See U.S. Const., amends. VI, XIV; Cal. Const., art. I, § 15; see also Pen. Code, § 686, subd. 1.)" (*People v. Woodward* (1992) 4 Cal.4th 376, 382 (*Woodward*).) Counsel have not provided California authority specifically addressing the right to have the public present at sentencing, but the Eighth and Ninth Circuits addressed the issue unequivocally. (*United States v. Thompson* (8th Cir. 2013) 713 F.3d 388, 393–394 ["the Sixth Amendment right to public access attaches at sentencing"]; *United States v. Rivera* (9th Cir. 2012) 682 F.3d 1223, 1229 (*Rivera*) ["we hold that the Sixth Amendment right to a public trial attaches at sentencing proceedings"].) "The right to a public trial entitles a criminal defendant 'at the very least . . . to have his friends, relatives and counsel present, no matter with what offense he may be charged.' [Citations.] Nonetheless, in some circumstances, exclusion of members of the public from a judicial proceeding does not implicate the constitutional guarantee." (*Ibid.*)

"The Sixth Amendment public trial guarantee creates a 'presumption of openness' that can be rebutted only by a showing that exclusion of the public was necessary to protect some 'higher value,' such as the defendant's right to a fair trial, or the government's interest in preserving the confidentiality of the proceedings. [Citation.] When such a 'higher value' is advanced, the trial court must balance the competing interests and allow a form of exclusion no broader than needed to protect those interests. [Citation.] Specific written findings are required to enable a reviewing court to determine the propriety of the exclusion." (*Woodward, supra*, 4 Cal.4th at p. 383.)

The Supreme Court held that the right to public trial may be forfeited by failing to object. (*People v. Virgil* (2011) 51 Cal.4th 1210

(*Virgil*).) "Initially, we note that the claim [of denial of public trial] is forfeited because defendant failed to object on this ground below. 'A defendant "may, by his own acts or acquiescence, waive his right [to a public trial] and thereby preclude any subsequent challenge by him of an order excluding the public. Unlike the jury trial right which requires an express personal waiver [citation], the constitutional guarantee of a public trial may be waived by acquiescence of the defendant in an order of exclusion." ' " (*Virgil* at p. 1237 [jurors questioned at sidebar].) "Defendant did not assert his right to a public trial below, so the trial court had no occasion to consider it. That claim of error was forfeited." (*People v. Gonzales* (2012) 54 Cal.4th 1234, 1292, fn. 27 (*Gonzales*) [failure to object forfeited the claim where court disallowed minor children at death penalty phase]; *People v. Edwards* (1991) 54 Cal.3d 787, 812–813 [right to have public at death-qualifying voir dire forfeited by failure to assert it timely]; *People v. Thompson* (1990) 50 Cal.3d 134, 156–157 [public trial claim forfeited by failure to object to conducting voir dire on jurors' views on capital punishment in chambers].)

We consider de novo a defendant's claim that he was denied his constitutional right to a public trial, but review the trial court's underlying factual determinations for substantial evidence. (*People v. Scott* (2017) 10 Cal.App.5th 524, 531.) Where a defendant has been deprived of the right, "no showing of prejudice is required '[b]ecause the right to a public trial protects the defendant from very subtle but very real injustices,' and '[re]quiring such a defendant to prove actual prejudice would deprive most defendants of the right to a public trial.' " (*Id.* at p. 532.)

4

**Analysis**

Poe was in custody on the day of sentencing. Before he was brought into the courtroom, his counsel asked the court to allow Poe's wife and family to enter. The court denied the request, and stated that it would not "allow anyone in." Counsel responded, "Okay," and did not object at the time or later in the proceedings. The sentencing hearing occurred on March 27, 2020—at the outset of the COVID-19 pandemic.

Poe's right to a public trial is protected by the Sixth Amendment to the United States Constitution and by the California Constitution and statute. (U.S. Const., amends. VI, XIV; Cal. Const., art. I, § 15; see Pen. Code, § 686, subd. 1; *Rivera*, *supra*, 682 F.3d at p. 1229.) The parties have not found California authority that expressly extends the public trial right to the sentencing hearing. In his brief and at argument, without conceding, the Attorney General has assumed—as will we—that the public trial right encompasses the sentencing hearing. Here, however, neither Poe nor his counsel asserted that right. Therefore, Poe's reliance on *Waller v. Georgia* (1984) 467 U.S. 39 is misplaced. While *Waller* sets forth the procedures and findings necessary to close a court proceeding, the prerequisite to initiate that inquiry is "the objection[ ] of the accused." (*Id.* at p. 47.) Accordingly, Poe's "failure to object" forfeited "his right [to have his family present at sentencing] . . . preclud[ing] any subsequent challenge by him of an order excluding the public." (*Virgil*, *supra*, 51 Cal.4th at p. 1237.) Nor does the record reflect whether Poe wanted a family member to address the court or merely sought to have them present.

In any event, were we to reach the claim we would find the court's health and safety concerns presented an adequate basis for its decision.

During the trial, as early as February 28, the court was vigilant about possible COVID-19 exposure. In response to a juror's stated discomfort about a fellow juror's coughing, the judge individually questioned the afflicted juror to determine the cause. Then, again outside the presence of other jurors, the judge assured the worried juror that the coughing was attributable to allergies and not to COVID-19. Under the circumstances of the early pandemic, such vigilance was more than warranted.

"On March 4, 2020, Governor Gavin Newsom declared a state of emergency in response to the global outbreak of COVID-19, a 'new disease, caused by a novel (or new) coronavirus that has not previously been seen in humans.' [Citation.] . . . [On March 19] the Governor issued an executive order requiring all Californians to stay at home except for limited activities.

"On March 23, 2020, Chief Justice Tani Cantil-Sakauye, in her capacity as Chairperson of the Judicial Council, issued an emergency statewide order pursuant to Government Code section 68115 suspending all jury trials and continuing them for a period of 60 days. . . . In so ordering, the Chief Justice explained: "The [Center[s] for Disease Control], the California Department of Public Health, and local county health departments have recommended increasingly stringent social distancing measures of at least six feet between people, and encouraged vulnerable individuals to avoid public spaces." (*Stanley v. Superior Court* (2020) 50 Cal.App.5th 164, 167 (*Stanley*).)

As we held in *Stanley*, the unprecedented health risks posed by COVID-19 led our Chief Justice and Governor to exercise the extraordinary powers afforded them by the Constitution and statute.

6

The Chief Justice recognized: "Courts cannot comply with these health restrictions and continue to operate as they have in the past. Court proceedings require gatherings of court staff, litigants, attorneys, witnesses, and juries, well in excess of the numbers allowed for gathering under current executive and health orders. Many court facilities in California are ill-equipped to effectively allow the social distancing and other public health requirements required to protect people involved in court proceedings and prevent the further spread of COVID-19." (*Stanley*, *supra*, 50 Cal.App.5th at pp.167.)

Poe's sentencing occurred in the first days of the pandemic when courts were beginning to grapple with these unprecedented challenges. We find protecting the parties, court personnel and the public from COVID-19 to be a " 'higher value' " which could justify limiting the public's access to a court proceeding. (*Woodward, supra*, 4 Cal.4th at p. 383.) Had Poe objected we would have a fuller understanding of how the court "balance[d] the competing interests" (*ibid.*), but because the claim was forfeited we need not reach that issue.

Had Poe asserted the right, it would have been incumbent on him to demonstrate how the presence of family members "bore a reasonably substantial relation to his opportunity to defend himself." (*Virgil*, *supra*, 51 Cal.4th at p. 1235.) In his belated objection, Poe does not specify who, other than his wife, was "in the hallway" nor how their absence deprived him of the opportunity to mitigate his sentence. He argues that the court "was precluded from seeing that appellant's family included two small children, one of whom was on the autism spectrum and had very specific needs." The record does not reflect, nor does Poe argue, that the children were among those waiting outside, but, if so, "[s]imply seeing

7

defendant's small children in the courtroom would not have provided the [judge] with insight. " (*Gonzales*, *supra*, 54 Cal.4th at p. 1292.)

In addition, Poe's argument for probation based on his role as a stepfather was addressed both in the presentence report, and, as he acknowledges, by counsel at sentencing. He complains he was denied "the opportunity for any of appellant's family members to provide details as to the child's care and needs, or, as defense counsel phrased it, 'to speak up for the handicapped child.'" Poe did not ask that his wife, or anyone else, be allowed to enter the courtroom to speak on his behalf. Nor is there any indication that she wanted to address the court. If the request for probation was predicated, at least in part, on the care Poe provided, we would have expected him to address the court on the benefits to his stepchild if he were granted probation. Instead he was mute. In the circumstances " 'we cannot conclude [his family's presence] . . . would have "contribute[d]" to the trial's "fairness" in any marginal way, for purposes of the Fourteenth Amendment's due process clause [citation]; or [that it] bore a " ' " 'reasonably substantial relation to the fullness of his opportunity to defend,' " ' " for purposes of section 15 of article I of the California Constitution . . . .' " (*Virgil*, *supra*, 51 Cal.4th at p. 1235.)

Poe contends, in his reply brief, that objection would have been futile. At oral argument counsel reiterated that view and added that the sentencing hearing was "inadequate" and "truncated." The record does not support Poe's position, and we reject it. The court received and read the letters defense counsel provided at sentencing and conducted a full hearing at which defense counsel restated the rationale for probation. The court did not "find . . . unusual circumstances present here to make

him eligible for probation," but rejected the People's request and the probation department's recommendation that Poe be sentenced to a nine-year prison term. The judge sentenced Poe to the middle term of three years with the four-year enhancement for a seven-year prison sentence.

Poe also argues that the court, sua sponte, should have continued the sentencing hearing or allowed his family to participate remotely. Poe did not ask to postpone sentencing, which proceeded "on a no-time-waived basis." Nor did he request remote access for his family. The court was not obliged to fashion unsought remedies for unstated concerns. Accordingly, even had Poe not forfeited the claim we would find no error.

## II.    The trial court failed to sentence Poe on count 2.

The Attorney General identifies a sentencing error: Poe was convicted of section 245, subdivision (a)(4) with the 12022.7, subdivision (e) enhancement, but the court stayed punishment on it without first imposing sentence.  "[I]f a defendant commits two crimes, punishment for one of which is precluded by section 654, that section requires the sentence for one conviction to be imposed, and the other *imposed and then stayed."* (*People v. Deloza* (1998) 18 Cal.4th 585, 594, italics added.) The court's omission results in "an unauthorized absence of sentence." (*People v. Alford* (2010) 180 Cal.App.4th 1463, 1472). The Attorney General asks us to correct the error by modifying the judgment. We do not presume to know the sentence the court would have imposed and remand for that purpose.

## DISPOSITION

The judgment is affirmed. The matter is remanded to the trial court to correct the sentence.

_____
Ross, J.*

WE CONCUR:


_____
Pollak, P.J.


_____
Brown, J.


*A160102 People v. Poe*

_____

  * Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11