## UNITED STATES *v.* SPRAGUE ET AL.

No. 606.  Argued January 21, 1931.—Decided February 24, 1931.

*Solicitor General Thacher,* with whom *Assistant Attorney General Youngquist* and *Messrs. Robert P. Reeder, John J. Byrne, Mahlon D. Kiefer,* and *Erwin N. Griswold* were on the brief, for the United States.

718

*Messrs. Julius Henry Cohen* and *Selden Bacon,* with whom *Messrs. Frederic M. P. Pearse, Daniel F. Cohalan, Kenneth E. Dayton, Leslie J. Tompkins, George H. Williams,* and *Burton A. Zorn* were on the brief, for appellees.

720

722

724

By special leave of Court, briefs were filed by *Mr. Eliot Tuckerman, Mr. William H. Crichton-Clarke,* and *Mr. Jeremiah M. Evarts,* as *amici curiae.*

MR. JUSTICE ROBERTS delivered the opinion of the Court.

The United States prosecutes this appeal from an order of the District Court (U. S. C., Tit. 18, § 682; Tit. 28, § 345) quashing an indictment which charged appellees with unlawful transportation and possession of intoxicating liquors in violation of § 3 of Title II of the National Prohibition Act (U. S. C., Tit. 27, § 12).

That court held that the Eighteenth Amendment by authority of which the statute was enacted has not been ratified so as to become part of the Constitution.

The appellees contended in the court below, and here, that notwithstanding the plain language of Article V, conferring upon the Congress the choice of method of ratification, as between action by legislatures and by conventions, this Amendment could only be ratified by the latter.

They say that it was the intent of its framers, and the Constitution must, therefore, be taken impliedly to require, that proposed amendments conferring on the United States new direct powers over individuals shall be ratified in conventions; and that the Eighteenth is of this character. They reach this conclusion from the fact that the framers thought that ratification of the Constitution must be by the people in convention assembled and not by legislatures, as the latter were incompetent to surrender the personal liberties of the people to the new na-

tional government. From this and other considerations, hereinafter noticed, they ask us to hold that Article V means something different from what it plainly says.

In addition they urge, that if there be any doubt as to the correctness of their construction of Article V, the Tenth Amendment removes it.

The District Court refused to follow this reasoning. It quashed the indictment, not as a result of analysis of Article V and Amendment X, but by resorting to "political science," the "political thought" of the times, and a "scientific approach to the problem of government." These, it thought, compelled it to declare the convention method requisite for ratification of an amendment such . as the Eighteenth. The appellees do not attempt to justify the lower court's action by the reasons it states, but by resubmitting to us those urged upon that court and by it rejected.

The United States asserts that Article V is clear in statement and in meaning, contains no ambiguity, and calls for no resort to rules of construction. A mere reading demonstrates that this is true. It provides two methods for proposing amendments. Congress may propose them by a vote of two-thirds of both houses; or, on the application of the legislatures of two-thirds of the States, must call a convention to propose them. Amendments proposed in either way become a part of the Constitution, " when ratified by the legislatures of three-fourths of the several States or by conventions in three-fourths thereof, *as the one or the other mode of ratification may be proposed by the Congress. . . . "*

The choice, therefore, of the mode of ratification, lies in the sole discretion of Congress. Appellees, however, point out that amendments may be of different kinds, as, *e. g.,* mere changes in the character of federal means or machinery, on the one hand, and matters affecting the liberty of the citizen on the other. They say that the

framers of the Constitution expected the former sort might be ratified by legislatures, since the States as entities would be wholly competent to agree to such alterations, whereas they intended that the latter must be referred to the people because not only of lack of power in the legislatures to ratify, but also because of doubt as to their truly representing the people. Counsel advert to the debates in the convention which had to do with the submission of the draft of the Constitution to the legislatures or to conventions, and show that the latter procedure was overwhelmingly adopted. They refer to many expressions in contemporary political literature and in the opinions of this court to the effect that the Constitution derives its sanctions from the people and from the people alone. In spite of the lack of substantial evidence as to the reasons for the changes in statement of Article V from its proposal until it took final form in the finished draft, they seek to import into the language of the Article dealing with amendments, the views of the convention with respect to the proper method of ratification of the instrument as a whole. They say that if the legislatures were considered incompetent to surrender the people's liberties when the ratification of the Constitution itself was involved, *a fortiori* they are incompetent now to make a further grant. Thus, however clear the phraseology of Article V, they urge we ought to insert into it a limitation on the discretion conferred on the Congress, so that it will read, "as the one or the other mode of ratification may be proposed by the Congress, as may be appropriate in view of the purpose of the proposed amendment." This can not be done.

The Constitution was written to be understood by the voters; its words and phrases were used in their normal and ordinary as distinguished from technical meaning; where the intention is clear there is no room for construction and no excuse for interpolation or addition. *Martin*

v. *Hunter's Lessee,* 1 Wheat. 304; *Gibbons* v. *Ogden,* 9 Wheat. 1; *Brown* v. *Maryland,* 12 Wheat. 419; *Craig* v. *Missouri,* 4 Pet. 410; *Tennessee* v. *Whitworth,* 117 U. S. 139; *Lake County* v. *Rollins,* 130 U. S. 662; *Hodges* v. *United States,* 203 U. S. 1; *Edwards* v. *Cuba R. Co.,* 268 U. S. 628; *The Pocket Veto Case,* 279 U. S. 655; Story on the Constitution (5th ed.) § 451; Cooley's Constitutional Limitations (2nd ed.), pp. 61, 70.

If the framers of the instrument had any thought that amendments differing in purpose should be ratified in different ways, nothing would have been simpler than so to phrase Article V as to exclude implication or speculation. The fact that an instrument drawn with such meticulous care and by men who so well understood how to make language fit their thought does not contain any such limiting phrase affecting the exercise of discretion by the Congress in choosing one or the other alternative mode of ratification is persuasive evidence that no qualification was intended.

This Court has repeatedly and consistently declared that the choice of mode rests solely in the discretion of Congress. *Dodge* v. *Woolsey,* 18 How. 331, 348; *Hawke* v. *Smith* (*No. 1*), 253 U. S. 221; *Dillon* v. *Gloss,* 256 U. S. 368; *National Prohibition Cases,* 253 U. S. 350. Appellees urge that what was said on the subject in the first three cases cited is *dictum.* And they argue that although in the last mentioned it was said the "Amendment *by lawful proposal and ratification,* has become part of the Constitution," the proposition they now present was not before the Court. While the language used in the earlier cases was not in the strict sense necessary to a decision, it is evident that Article V was carefully examined and that the Court's statements with respect to the power of Congress in proposing the mode of ratifi-

cation were not idly or lightly made. In the *National Prohibition Cases,* as shown by the briefs, the contentions now argued were made—the only difference between the presentation there and here being one of form rather than of substance.

The Tenth Amendment provides:

" The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

Appellees assert this language demonstrates that the people reserved to themselves powers over their own personal liberty, and that the legislatures are not competent to enlarge the powers of the federal government in that behalf. They deduce from this that the people never delegated to the Congress the unrestricted power of choosing the mode of ratification of a proposed amendment. But the argument is a complete *non sequitur.* The Fifth Article does not purport to delegate any governmental power to the United States, nor to withhold any from it. On the contrary, as pointed out in *Hawke* v. *Smith* (*No. 1*), *supra,* that Article is a grant of authority by the people to Congress, and not to the United States. It was submitted as part of the original draft of the Constitution to the people in conventions assembled. They deliberately made the grant of power to Congress in respect to the choice of the mode of ratification of amendments. Unless and until that Article be changed by amendment, Congress must function as the delegated agent of the people in the choice of the method of ratification.

The Tenth Amendment was intended to confirm the understanding of the people at the time the Constitution was adopted, that powers not granted to the United States were reserved to the States or to the people. It added nothing to the instrument as originally ratified and has

734

no limited and special operation, as is contended, upon the people's delegation by Article V of certain functions to the Congress.

The United States relies upon the fact that every amendment has been adopted by the method pursued in respect of the Eighteenth. Appellees reply that all these save the Eighteenth dealt solely with governmental means and machinery rather than with the rights of the individual citizen. But we think that several amendments touch rights of the citizens, notably the Thirteenth, Fourteenth, Fifteenth, Sixteenth and Nineteenth, and in view of this, weight is to be given to the fact that these were adopted by the method now attacked. *The Pocket Veto Case, supra.*

For these reasons we reiterate what was said in the *National Prohibition Cases, supra,* that the "Amendment by lawful proposal and ratification, has become a part of the Constitution."

The order of the court below is

*Reversed.*

The CHIEF JUSTICE took no part in the consideration or decision of this case.