855 So.2d 644 (2003)
Timothy CONDON, Appellant,
v.
OFFICE DEPOT, INC., a Delaware corporation d/b/a Office Depot, Appellee.
No. 2D02-1688.
District Court of Appeal of Florida, Second District.
August 22, 2003.
Rehearing Denied October 7, 2003.
*645 Michael C. Addison of Addison & Delano, P.A., Tampa, for Appellant.
Richard M. Zabak and Rebecca O'Dell Townsend of Gray, Harris & Robinson, P.A., Tampa, for Appellee.
FULMER, Judge.
In this appeal we consider whether Florida recognizes a private cause of action arising under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 (1999), in the absence of specific state legislation authorizing such action. We hold that no enabling legislation is required before this claim can be heard in state courts. Therefore, we reverse.
In a complaint filed in circuit court, Timothy Condon alleged that Office Depot violated the TCPA by sending him thirteen unsolicited facsimile advertisements.[1] The TCPA prohibits, among other things, the sending of certain unsolicited facsimile advertisements. 47 U.S.C. § 227(b)(1)(C). The TCPA provides a private cause of action only in state court "if otherwise permitted by the laws or rules of court of a *646 State." 47 U.S.C. § 227(b)(3).[2] Interpretation of the phrase "if otherwise permitted by the laws or rules of court of a State" was the crux of the dispute in the underlying proceeding.
Office Depot filed a motion to dismiss Condon's complaint, asserting that the "if otherwise permitted" language required the Florida Legislature to enact substantive legislation before this claim was cognizable in state court and that Florida had taken no such action to opt in. The trial court agreed and dismissed the suit with prejudice.
On appeal, Office Depot reiterates the arguments made in the trial court. Condon argues, as he did below, that the "if otherwise permitted" language does not require the state to opt in by taking affirmative action to permit suits under the TCPA. It simply means that when a TCPA claim is brought in a state court, local laws control procedure, jurisdiction, venue, administration, and the like.
Interpretation of this language has been addressed by other state[3] and federal courts,[4] although it appears that we are the first appellate court in Florida to do *647 so. We join the majority view[5] and conclude that the State is not required to adopt enabling legislation before a state court of competent jurisdiction can entertain this federal law claim. Rather, we interpret the language "if otherwise permitted" to acknowledge the principle that states have the right to structure their own court systems and that state courts are not obligated to change their procedural rules or to create courts to accommodate TCPA claims. "The requirement that a state court of competent jurisdiction treat federal law as the law of the land does not necessarily include within it a requirement that the state create a court competent to hear the case in which the federal claim is presented." Howlett ex rel. Howlett v. Rose, 496 U.S. 356, 372, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990). The "federal law takes the state courts as it finds them." Howlett, 496 U.S. at 372, 110 S.Ct. 2430 (citing Henry Hart, The Relations Between State and Federal Law, 54 Colum. L.Rev. 489, 504 (1954)). "The States thus have great latitude to establish the structure and jurisdiction of their own courts." Howlett, 496 U.S. at 372, 110 S.Ct. 2430. It is these principles of federal law that we conclude are the subject of the "if otherwise permitted" language.
We align ourselves with the majority view because we are of the opinion that the minority view requiring opt-in legislation runs afoul of the Supremacy Clause of the United States Constitution. There is a presumption of state court jurisdiction over claims arising under federal law. Yellow Freight Sys., Inc. v. Donnelly, 494 U.S. 820, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990). And, while exclusive jurisdiction in state court for a federal claim is unusual, it does not negate controlling principles of constitutional law.
Federal law is enforceable in state courts not because Congress has determined that federal courts would otherwise be burdened or that state courts might provide a more convenient forumalthough both might well be truebut because the Constitution and laws passed pursuant to it are as much laws in the States as laws passed by the state legislature. The Supremacy Clause makes those laws "the supreme Law of the Land," and charges state courts with a coordinate responsibility to enforce that law according to their regular modes of procedure.
Howlett, 496 U.S. at 367, 110 S.Ct. 2430; see also Testa v. Katt, 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947) (holding that Rhode Island state courts could not refuse to enforce a federal statute when the courts had jurisdiction that was adequate and appropriate to adjudicate the type of claim covered by the federal statute).
The Supreme Court has recognized a presumption of state-court jurisdiction over federal claims, which "can be rebutted by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests." Gulf Offshore Co. v. Mobil Oil Corp., 453 U.S. 473, 478, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981). The ambiguous language "if otherwise permitted" does not explicitly direct the enactment of enabling state legislation. Nor does the legislative history support such a requirement. According to Senator Hollings, the bill sponsor:

*648 The substitute bill contains a private right-of-action provision that ... would allow consumers to bring an action in State court against any entity that violates the bill. The bill does not, because of constitutional constraints, dictate to the States which court in each State shall be the proper venue for such an action as this is a matter for State legislators to determine. Nevertheless, it is my hope that States will make it as easy as possible for consumers to bring such actions, preferably in small claims court.
Small claims court or a similar court would allow the consumer to appear before the court without an attorney. The amount of damages in this legislation is set to be fair to both the consumer and the telemarketer. However, it would defeat the purposes of the bill if the attorneys' costs to consumers of bringing an action were greater than the potential damages. I thus expect that the States will act reasonably in permitting their citizens to go to court to enforce this bill.
137 Cong. Rec. S16,205-06 (1991) (statement of Sen. Hollings) (emphasis added).[6] Senator Hollings thus expected state legislation to address issues like venue. Finally, we see no incompatibility between state-court jurisdiction and federal interests. To the contrary, "although Congress created the private TCPA action, it was from the beginning a cause of action in the states' interests." Int'l Sci. & Tech. Inst., Inc. v. Inacom Communications, Inc., 106 F.3d 1146, 1154 (4th Cir.1997) (reciting Congressional findings that over half the states had similar statutes but they were being evaded through interstate operations and that the states had expressed a desire for federal legislation to supplement their restrictions). Given the presumption of state-court jurisdiction and the absence of any factors that would rebut its existence, we would require an explicit mandate from Congress that the private cause of action it created was conditioned on prior state approval.
"Federal law confers rights binding on state courts, the jurisdiction of which is governed in the first instance by state laws." Gulf Offshore Co., 453 U.S. at 478, 101 S.Ct. 2870 (footnote omitted). The Florida Constitution is the source of jurisdiction for Florida's courts. Under article V, section 5(b), Florida circuit courts are courts of general jurisdiction.[7] As such, they are competent to hear the type of claim filed by Condon. And they do hear similar claims under section 365.1657, Florida Statutes (2001), which makes it unlawful to send unsolicited fax advertisements and provides for enforcement by the Attorney General. Because section 365.1657 was passed prior to the 1991 enactment of the TCPA, see ch. 89-95, Laws of Fla., we do not consider it as a legislative refusal to permit a private cause of action under this later-enacted federal law.
For the reasons expressed, we conclude that the trial court erred by dismissing *649 Condon's complaint. Accordingly, we reverse and remand for further proceedings.
Reversed and remanded.
NORTHCUTT, J., Concurs.
ALTENBERND, C.J., Dissents with opinion.
ALTENBERND, Chief Judge, Dissenting.
I recognize that the court's ruling in this case is supported by the majority of jurisdictions that have considered this issue. It may be that I am simply troubled by the questionable precedent created by a federal statute that effectively enacts a uniform state law for all fifty states by enacting a single federal law that can only be enforced in state courts. Nevertheless, I am persuaded by Maryland's opinion in R.A. Ponte Architects, Ltd. v. Investors' Alert, Inc., 149 Md.App. 219, 815 A.2d 816 (2003), and accordingly dissent. I do not believe that the federal statute should be interpreted as requiring a state court to handle these federal claims merely because a state's constitution provides for a trial court of general jurisdiction.
In 1989, the Florida Legislature enacted a statute that prohibited certain unsolicited advertising by facsimile machine. See ch. 89-95, Laws of Fla. (codified at § 365.1657, Fla. Stat. (2002)). The statute provided for a civil penalty not to exceed $500 per violation. Significantly, it did not expressly provide for a private right of action. In this state, there is no question that this consumer protection statute did not implicitly create a private right of action. See Villazon v. Prudential Health Care Plan, Inc., 843 So.2d 842 (Fla.2003).
In 1991, Congress enacted the Telephone Consumer Protection Act. See Telephone Consumer Protection Act of 1991, Pub.L. No. 102-243, § (3)(a), 105 Stat. 2394 (1991). In addition to enforcement by government agencies, this federal statute provided a private right of action allowing for $500 in damages for each violation and treble damages for certain intentional violations. See 47 U.S.C. § 227(b)(3). Congress had detailed knowledge about the volume of facsimile advertising occurring at that time, and it realized that this advertising could result in extensive litigation. See Int'l Sci. & Tech. Inst., Inc. v. Inacom Communications, 106 F.3d 1146, 1156 (4th Cir.1997). Congress declined to fund a federal judicial forum to resolve this new federal claim for relief. Instead, it decided to shift the public cost of these private lawsuits entirely to the states. Congress was clearly aware that it was treading close to the edge of its powers under the Tenth Amendment. See Int'l Sci. & Tech. Inst., 106 F.3d at 1154, 1157. As a result, the statute does not mandate that states must or shall extend state court jurisdiction to include this new federal cause of action. The statute states:
A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State
(A) an action based on a violation of this subsection....
47 U.S.C. § 227(b)(3)(A).
No one suggests that Florida has any "rules of court" that expressly allow the circuit courts to entertain this federal claim. The Florida Legislature never amended section 365.1657 to create a private right of action or to give Florida courts jurisdiction over the federal claim. Additionally, the Florida Legislature never adopted a statute, either before or after 1991, that would authorize Florida's courts to consider this unusual federal statutory cause of action. Instead, this court's opinion holds that the general jurisdiction *650 clause in the Florida Constitution is sufficient, without any legislative action, to give circuit courts jurisdiction over these federal claims.
The issue in this case is not whether the federal statute is unconstitutional under the Tenth Amendment. The issue is not whether Florida's circuit or county courts could exercise jurisdiction over this federal claim. The dispositive issue in this case is one of statutory interpretation. The question is whether Congress intended the phrase, "may if permitted by law," to mean "shall unless expressly prohibited hereafter by that state's legislature" when a state's constitution provides for a trial court of general jurisdiction. I do not see this meaning within the text of the statute. I do not find anything that suggests that Congress intended its polite wording to have such impact. Congress is familiar with the Tenth Amendment and the limitations upon its power to "commandeer" state agencies. See Printz v. United States, 521 U.S. 898, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997); New York v. United States, 505 U.S. 144, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992). See generally F.E.R.C. v. Mississippi, 456 U.S. 742, 102 S.Ct. 2126, 72 L.Ed.2d 532 (1982). Congress probably could not compel a state agency to provide an exclusive administrative forum to enforce this consumer statute, and I question whether it intended state courts to become the equivalent of a consumer enforcement agency without any authorization by the state's legislature. If Congress wishes to compel state courts to be the exclusive judicial forum implementing such a federal policyunless and until a state's legislature enacts a law relieving its courts of this taskit should be required to state that mandate explicitly.
I do not view the Supremacy Clause as a major factor in this analysis. This court and all state courts must obviously obey valid federal laws as the supreme law of the land. However, when the United States Constitution was adopted, the Tenth Amendment was quickly added to ensure states' rights and to explain that the federal government obtained its power by "delegation" from the people and the states. See United States v. Sprague, 282 U.S. 716, 733, 51 S.Ct. 220, 75 L.Ed. 640 (1931); United States v. Darby, 312 U.S. 100, 124, 61 S.Ct. 451, 85 L.Ed. 609 (1941); see also U.S. Const. amend. X. The question in this case is whether Congress intended to claim that it had been delegated the power to expand the jurisdiction of Florida's state courts to include claims not authorized by Florida's own legislature. I see no evidence that Congress had such an intent. Given the permissive language used in section 227(b)(3), I would interpret the statute to avoid any possible Tenth Amendment issue. Accordingly, I would interpret the federal statute as requiring that the Florida Legislature enact, either before or after the enactment of the federal statute, a state law permitting Florida's courts to resolve these federal claims.
Because advertising by facsimile has become less common with the advent of the Internet, I would be less concerned with the outcome in this case were it not for another similar section of this statute. Section (c)(5) of this same federal statute, like section (b)(3), contains the same language concerning a private right of action for unwanted telephone solicitations in state courts. See 42 U.S.C. § 227(c)(5) (stating that persons "may, if otherwise permitted by the laws or rules of court of a State, bring [an action] in an appropriate court of that State"). With the advent of nationwide do-not-call lists, and potential do-not-e-mail lists, Congress may greatly expand its use of state courts to implement federal law. This is occurring at a time when state court budgets are very tight. These courts simply lack the state funding to *651 serve the federal government as its exclusive consumer protection dispute resolution forum.
NOTES
[1] Condon also alleged that Office Depot violated 47 U.S.C. § 227(d)(1)(B) by sending facsimiles that were not clearly marked in the margins with certain identifying information. Office Depot argued, and the trial court held, that the federal statute did not allow a private cause of action for this type of claim. Condon does not appeal this portion of the trial court's order.
[2] 47 U.S.C. § 227(b)(3) states:

A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State
(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
(C) both such actions.
[3] See, e.g., Hooters of Augusta, Inc. v. Nicholson, 245 Ga.App. 363, 537 S.E.2d 468 (2000) (construing TCPA to create private cause of action and to confer jurisdiction on state courts without need for enabling state legislation); R.A. Ponte Architects, Ltd. v. Investors' Alert, Inc., 149 Md.App. 219, 815 A.2d 816 (2003) (holding that Maryland's prior enactment of statute prohibiting unsolicited fax ads, which provided for enforcement by Attorney General only, and Maryland's subsequent failure to amend the statute to create a private cause of action, was sufficient evidence of the legislature's intent not to accept the federal grant of state jurisdiction over private actions); Reynolds v. Diamond Foods & Poultry, Inc., 79 S.W.3d 907 (Mo.2002) (holding that state enabling legislation was not necessary to create state jurisdiction over private cause of action under TCPA); Zelma v. Mkt. U.S.A., 343 N.J.Super. 356, 778 A.2d 591 (App.Div.2001) (same); Schulman v. Chase Manhattan Bank, 268 A.D.2d 174, 710 N.Y.S.2d 368, 371 (2000) (rejecting opt-in interpretation of identical language in section regulating telephone calls because "such an interpretation of the statute is inconsistent with established principles governing state court jurisdiction over claims based on Federal laws"); Autoflex Leasing, Inc. v. Mfrs. Auto Leasing, Inc., 16 S.W.3d 815, 817 (Tex.App. 2000) (holding that "Congress intended the states to pass legislation or promulgate court rules consenting to state court actions based on the TCPA, before such suits under the TCPA may be brought in state courts").
[4] See, e.g., Murphey v. Lanier, 204 F.3d 911 (9th Cir.2000) (finding no federal court jurisdiction over private cause of action under TCPA); Foxhall Realty Law Offices, Inc. v. Telecomms. Premium Servs., Ltd., 156 F.3d 432, 435 (2d Cir.1998) (stating that jurisdiction over TCPA private cause of action existed in state courts, which are "courts of general jurisdiction and are accordingly presumed to have jurisdiction over federally-created causes of action unless Congress indicates otherwise," but not in federal courts, which are "courts of limited jurisdiction which thus require a specific grant of jurisdiction"); ErieNet, Inc. v. Velocity Net, Inc., 156 F.3d 513 (3d Cir.1998); Int'l Sci. & Tech. Inst., Inc. v. Inacom Communications, Inc., 106 F.3d 1146, 1152 (4th Cir.1997) (finding exclusive state court jurisdiction over private TCPA action and quoting Senator Hollings, the sponsor of TCPA, as stating that "[t]he bill does not, because of constitutional constraints, dictate to the States which court in each State shall be the proper venue for such an action, as this is a matter for State legislators to determine").
[5] Of the cases cited, only Texas and Maryland have held that the state legislature must affirmatively act or manifest its consent to state court jurisdiction before this federal claim is cognizable in state court. See Autoflex Leasing, 16 S.W.3d 815; R.A. Ponte Architects, 815 A.2d 816.
[6] While Senator Hollings was specifically discussing computerized telephone calls, which are also prohibited by the TCPA, the provision creating a private cause of action in state court applies to both computerized telephone calls and unsolicited fax advertisements.
[7] County courts exercise the jurisdiction prescribed by general law. Art. V, § 6(b), Fla. Const. Under section 34.01(1)(c), Florida Statutes (2001), county courts have original jurisdiction over "all actions at law in which the matter in controversy does not exceed the sum of $15,000, exclusive of interest, costs, and attorney's fees, except those within the exclusive jurisdiction of the circuit courts." Thus, depending on the relief sought and the amount in controversy, a claim under the TCPA could be filed in county court.