GRUENDER, Circuit Judge,
concurring.
I write separately because although I would affirm the district court’s decision to order a partial closure, I would recognize Thompson’s constitutional right to a public sentencing under the Fifth Amendment, rather than the Sixth.
The Sixth Amendment guarantees that “[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial.....” Thompson argues, and the Court today apparently agrees, that sentencing is a phase of “trial” as the word is used in the Sixth Amendment. The Supreme Court has only “assumefd] arguen-do that sentence is part of the trial for purposes of the Sixth Amendment.” Pollard v. United States, 352 U.S. 354, 361, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957) (holding that assuming petitioner had a Sixth Amendment right to a speedy sentencing, the right was not violated). The Supreme Court has, however, observed that “a prosecution terminates only when sentence is imposed.” Bradley v. United States, 410 U.S. 605, 609, 93 S.Ct. 1151, 35 L.Ed.2d 528 (1973). Sentencing proceedings, then, may comprise the latter phase of “all criminal prosecutions,” but are they part of a “trial”?[2] I conclude they are not.
*397 “The Constitution was written to be understood by the voters; its words and phrases were used in their normal and ordinary as distinguished from technical meaning____” United States v. Sprague, 282 U.S. 716, 731, 51 S.Ct. 220, 75 L.Ed. 640 (1931). The Second Circuit Court of Appeals recently provided a thorough analysis of the relationship between sentencing and trial at the time of the nation’s founding. See United States v. Ray, 578 F.3d 184, 195 (2d Cir.2009).[3] In particular, the Ray court observed that Sir William Blackstone, whose writings exerted considerable influence on the Founders, distinguished between trial and sentencing. Blackstone’s Commentaries discuss the processes for adjudicating guilt or innocence in a chapter entitled “Of Trial and Conviction,” while a subsequent chapter, “Of Judgment and Its Consequences,” “eonsider[s] the next stage of criminal prosecution, after trial and conviction are past.” Id. at 195 (quoting 4 W. Blackstone, Commentaries on the Laws of England 368 (1769)); see also Apprendi v. New Jersey, 530 U.S. 466, 478 n. 4, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (“‘[A]fter trial and conviction are past,’ the defendant is submitted to ‘judgment’ by the court, 4 Blackstone 368 — the stage approximating in modern terms the imposition of sentence.”). The Second Circuit also cited to early decisions of American courts, which similarly wrote of trial and sentencing as distinct phases of a criminal prosecution. Id. at 195-96.
Nor is such a bifurcated conception of trial and sentencing particularly alien to our modern understanding of these facets of criminal proceedings. For example, the Federal Rules of Criminal Procedure consider “Trials” in a series of rules separate and apart from the rules involving “Sentencing and Judgment.” As the Ray court concluded, “[t]he structure of the Rules reflects an understanding that trials conclude with the announcement of a verdict of guilty or not guilty, and sentencing takes place after trial.” Id. at 196. The Supreme Court has often described sentencing as a post-trial phase.[4] See, e.g., *398 Lafler v. Cooper, 558 U.S. -, 132 S.Ct. 1376, 1385-86, 182 L.Ed.2d 398 (2012) (“The Sixth Amendment requires effective assistance of counsel at critical stages of a criminal proceeding. Its protections are not designed simply to protect the trial.... The precedents also establish that there exists a right to counsel during sentencing in both noncapital and capital cases.” (internal citations omitted)); Alabama v. Smith, 490 U.S. 794, 801-03, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989) (holding that “there is no basis for a presumption of vindictiveness where a second sentence imposed after a trial is heavier than a first sentence imposed after a guilty plea”); Williams v. New York, 337 U.S. 241, 246-47, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949) (discussing “the historical basis” and “sound practical reasons” for “different ev-identiary rules governing trial and sentencing procedures”). Furthermore, the Supreme Court already has implicitly concluded that sentencing is not part of a trial. Although the Sixth Amendment “right of trial by jury in criminal prosecutions” is well established, Callan v. Wilson, 127 U.S. 540, 550, 8 S.Ct. 1301, 32 L.Ed. 223 (1888), “there is no Sixth Amendment right to jury sentencing,” McMillan v. Pennsylvania, 477 U.S. 79, 93, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). If sentencing were subsumed within a Sixth Amendment “trial,” these holdings would be irreconcilable.
Our colleagues on the Ninth Circuit Court of Appeals recently addressed this issue and, largely because they had already recognized a First Amendment right of access to sentencing proceedings, they interpreted the Sixth Amendment right to a public trial as also encompassing sentencing proceedings. See United States v. Rivera, 682 F.3d 1223, 1229 (9th Cir.2012). In focusing on the benefits generated by a constitutional right to a public sentencing, the Rivera court adopted a similar analysis to the one the Court employs today. I find the Ray court’s approach more persuasive for two primary reasons. First, as the Supreme Court has consistently explained, constitutional interpretation should be tethered to the common meaning of the text at the time of the nation’s founding. See Crawford v. Washington, 541 U.S. 36, 42-50, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); Sprague, 282 U.S. at 731-32, 51 S.Ct. 220. The Ray court, by focusing on the meaning of trial in use at the time of the nation’s founding, is faithful to this instruction; in contrast, the Rivera court and the Court today largely rely on the consequences of their decision — namely the advantages that flow from the recognition of a Sixth Amendment right to a public sentencing — to justify their interpretation. Weighing attendant benefits is not the touchstone of this analysis. I do not dispute that although the benefits of a public sentencing, just like the benefits “of a public trialf,] are frequently intangible, difficult to prove, or a matter of chance, the Framers plainly thought them nonetheless real.” Waller v. Georgia, 467 U.S. *399 39, 49 n. 9, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984). Yet the distinction between “trial” and “sentencing” indicates there is no Sixth Amendment right to a public sentencing, and the creation of salutary benefits as a byproduct of recognizing a constitutional right should not sanction a strained reading of the word “trial.”
Second, to the extent the Ninth Circuit and the decision today utilized the modern-day scope of the First Amendment right of access to court proceedings as a lens through which to interpret the scope of the Sixth Amendment’s public trial provision, see supra pp. 392-94, I do not find their reliance to be conclusive. The First Amendment surely offers one among many useful clues to the contours of the Sixth Amendment. See Presley v. Georgia, 558 U.S. 209, 130 S.Ct. 721, 724, 175 L.Ed.2d 675 (2010). But it is not a decisive factor because, as this and other circuits have concluded, these two sets of rights are not, in fact, coterminous. The first four words of the Sixth Amendment constrain its application to criminal proceedings. See Gannett Co. v. DePasquale, 443 U.S. 368, 386-87, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979) (“In conspicuous contrast with some of the early state constitutions that provided for a public right to open civil and criminal trials, the Sixth Amendment confers the right to a public trial only upon a defendant and only in a criminal case.” (footnote omitted)). Although the Supreme Court has yet to recognize a First Amendment right to attend civil proceedings, a majority of the Justices have implied as much. See Huminski v. Corsones, 396 F.3d 53, 83 n. 30 (2d Cir.2004) (describing how “six of the eight sitting Justices” in Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), “clearly implied that the [First Amendment right of access to courts] applies to civil cases as well as criminal ones”). The appellate courts have persistently amplified the First Amendment right of access well beyond the sphere of criminal proceedings. See, e.g., N.Y. Civil Liberties Union v. NYC Transit Auth., 684 F.3d 286, 298 (2d Cir.2011); Detroit Free Press v. Ashcroft, 303 F.3d 681, 700 (6th Cir.2002); Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1070 (3d Cir.1984). For example, this court has “conclude[d] that the protection of the First Amendment extends to proceedings for contempt,” In re Iowa Freedom of Info. Council, 724 F.2d 658, 661 (8th Cir.1983), even though the Supreme Court has held that the Sixth Amendment does not guarantee public contempt proceedings, Levine v. United States, 362 U.S. 610, 616, 80 S.Ct. 1038, 4 L.Ed.2d 989 (1960) (“Procedural safeguards for criminal contempts do not derive from the Sixth Amendment. Criminal contempt proceedings are not within ‘all criminal prosecutions’ to which that Amendment applies.”).
Although the Presley Court pondered over “[t]he extent to which the First and Sixth Amendment public trial rights are coextensive,” 130 S.Ct. at 724, the Court likely was mulling over the extent to which they partially overlap, rather than envisioning truly coterminous First and Sixth Amendment rights. Enforcing such a symmetry would be in great tension with the judiciary’s trend toward recognizing a broad First Amendment right of access applicable to civil proceedings.[5] The Pres *400 ley Court did seem to view as axiomatic the proposition that, “at least in the context of juror selection proceedings,” courts should not grant “one who asserts a First Amendment privilege .greater rights to insist on public proceedings than the accused has.” Id. I interpret these comments as observing that if a member of the public has a First Amendment right to attend proceedings, then so, too, should the accused have a right to have the public present. The Court did not, however, command that this right be derived from the Sixth Amendment.
The notion that the public’s First Amendment right of access is more expansive than the accused’s Sixth Amendment right to public proceedings is less troubling than it initially may seem because the Constitution does not relegate the accused to relying solely on the Sixth Amendment to bring their rights into alignment with the rights of the general public. “[I]t is now clear that the sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause.... The defendant has a legitimate interest in the character of the procedure which leads to the imposition of sentence.... ” Gardner v. Florida, 430 U.S. 349, 358, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) (plurality opinion).[6] Thus, I conclude that it is the dictates of due process under the Fifth Amendment, and not the Sixth Amendment, that bestow upon a federal criminal defendant the right to insist upon a public sentencing. Cf. Levine, 362 U.S. at 616, 80 S.Ct. 1038 (holding that, although the Sixth Amendment does not apply to contempt proceedings because they are not “criminal prosecutions,” “due process demands appropriate regard for the requirements of a public proceeding in cases of criminal contempt”); see also Deck, 544 U.S. at 632, 125 S.Ct. 2007 (holding that due process prohibits the routine practice of visibly shackling defendants in the presence of juries during sentencing proceedings); Ake, 470 U.S. at 83-84, 105 5.Ct. 1087 (holding that when the State presents aggravating psychiatric evidence during a capital sentencing proceeding, the defendant has a due process right to the assistance of a psychiatrist).
Just as the Sixth Amendment right to public trial is not absolute, so too would the district court have discretion to determine whether the accused’s Fifth Amend *401 ment right to a public sentencing must yield to legitimate state interests. Cf. United States v. Farmer, 32 F.3d 369, 371-72 (8th Cir.1994) (upholding under an abuse of discretion standard of review the district court’s decision to partially close the courtroom because “the victim’s age, the brutal nature of the offense and the victim’s well-reasoned fear of [the defendant] and his family was more than enough to justify the decision”). A district court may order a partial or full closure of the court during sentencing but only if the court finds that factors particular to the sentencing justify such closure. Cf. Levine, 362 U.S. at 616, 80 S.Ct. 1038 (“Inasmuch as the petitioner’s claim thus derives from the Due Process Clause and not from one of the explicitly defined procedural safeguards of the Constitution ... [the existence of a due process violation] must turn on the particular circumstances of the case.... The narrow question is whether, in light of the facts that the grand jury, petitioner and his counsel were present throughout ... he was denied due process because the general public remained excluded from the courtroom.”). In determining whether a defendant’s due process rights were violated, the district court should consider the factors courts have traditionally relied upon in gauging the necessity of a closure, namely the Waller factors. Cf. Deck, 544 U.S. at 629, 125 S.Ct. 2007. I agree with the conclusion that witness intimidation justified this partial closure of the courtroom during Thompson’s sentencing. Accordingly, because Thompson’s due process rights were not violated, I would affirm the sentence imposed by the district court.

. The Supreme Court has recognized a Sixth Amendment right to effective assistance of counsel during sentencing. See supra p. 394 (quoting Gardner v. Florida, 430 U.S. 349, 358, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977)). As the Sixth Amendment explains, "in all criminal prosecutions, the accused shall enjoy ... the Assistance of Counsel for his defence.” Therefore that "sentencing is a critical stage of the criminal proceedings” triggering the *397 attachment of the Sixth Amendment right to counsel, Gardner, 430 U.S. at 358, 97 S.Ct. 1197, tells us nothing of whether sentencing is also part of a "trial,” causing the right to a public proceeding to attach.

. The Second Circuit conducted its analysis in the context of an asserted Sixth Amendment right to a speedy, rather than public, sentencing. Nonetheless, the vast majority of its work is directly applicable to the instant case. In the context of the phrase "speedy and public trial,” I see no reason to define the noun "trial” in one way when the adjective "speedy” modifies it and in another way when the adjective "public” modifies it.

. To be sure, the Supreme Court has sometimes, but not always, referred to the guilt and penalty "phases” of capital murder trials. Compare California v. Brown, 479 U.S. 538, 539, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987) and Estelle v. Smith, 451 U.S. 454, 462-63, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) with Deck v. Missouri, 544 U.S. 622, 630, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005) ("The considerations that militate against the routine use of visible shackles during the guilt phase of a criminal trial apply with like force to penalty proceedings in capital cases." (emphasis added)) and Ake v. Oklahoma, 470 U.S. 68, 83, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). I do not interpret such references as proof that sentencing is necessarily a phase of a Sixth Amendment "trial.” These remarks appear to be limited to capital cases, which generally involve uniquely "elaborate sentencing procedures ... because of constraints [the Court] ha[s] said the Eighth Amendment places on capital sentencing.” Ring v. Arizona, 536 U.S. 584, 606, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). As a result of these constraints, the Supreme Court has held that aggravating factors that serve as predicates for the imposition of the death penalty must be found by a jury, because they are "the functional equivalent of an element of a greater offense.” Id. at 609 (quoting Apprendi, 530 U.S. at 494 n. *398 19, 120 S.Ct. 2348). Despite the Supreme Court’s recognition that sentencing during a capital proceeding “in many respects resembles a trial on the issue of guilt or innocence,” these similarities nonetheless do "not mean that it is like a trial in respects significant to the Sixth Amendment's guarantee of a jury trial.” Spaziano v. Florida, 468 U.S. 447, 458-59, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984). Accordingly, in keeping with the absence of a Sixth Amendment right to a jury sentencing, the Court has held that the Sixth Amendment does not require a jury, rather than a judge, to impose the death penalty. Id. at 458-65, 104 S.Ct. 3154; see also Ring, 536 U.S. at 612, 122 S.Ct. 2428 (Scalia, J., concurring) ("What today's decision says is that the juiy must find the existence of the fact that an aggravating factor existed. Those States that leave the ultimate life-or-death decision to the judge may continue to do so....”).

. Both the Ninth Circuit in Rivera and the Court today quote Waller for the proposition that "there can be little doubt that the explicit Sixth Amendment right of the accused is no less protective of a public trial than the implicit First Amendment right of the press and public.” Supra p. 392. As discussed above, it has become almost de rigeur to view the First Amendment’s right of public access as reaching beyond the Sixth Amendment’s limitation *400 to criminal prosecutions. Accordingly, the Waller Court's remark cannot mean what the Court today implies; namely, that if the public has a First Amendment right of access to a particular proceeding, then the words of the Sixth Amendment must be stretched so as to accommodate an analogous right. There are only two ways for this contention to be true, and both options involve repudiating binding precedent. First, we could apply the public trial right in the civil context, thereby contradicting Supreme Court decisions such as Levine that limit the Sixth Amendment to criminal proceedings. Alternatively, we could contradict our own previous ruling in In- re Iowa Freedom of Infonnation Council and restrict the First Amendment right of access to criminal proceedings. In lieu of either choice, I interpret the comment as suggesting that the First and Sixth Amendment rights to a public "trial” (as the word is used in the Sixth Amendment) do overlap, without providing commentary on the extent to which they may enjoy broader symmetry. But harnessing the Waller Court’s observation about a criminal accused’s right to a public trial as proof of a Sixth Amendment right to a public sentencing begs the question of what exactly constitutes , a "trial” under the Sixth Amendment.

. The Gardner Court further observed that simply because "due process applies [to sentencing] does not, of course, implicate the entire panoply of criminal trial procedural rights.” Id. at 358 n. 9, 97 S.Ct. 1197. This distinction between the procedural due process required during sentencing and trial reinforces my conclusion that the two should not be conflated.