RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0267p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

EMOND DUREA LOGAN,

*Petitioner-Appellant*,

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee*.

No. 17-1996

---

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
Nos. 1:08-cr-00274-16; 1:15-cv-00076—Paul Lewis Maloney, District Judge.

Argued: October 18, 2018

Decided and Filed: December 13, 2018

Before: GRIFFIN and DONALD, Circuit Judges; BERTELSMAN, District Judge.[*]

---

## COUNSEL

**ARGUED:** Jeffrey M. Brandt, ROBINSON & BRANDT, P.S.C., Covington, Kentucky, for Appellant. Sally J. Berens, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Jeffrey M. Brandt, ROBINSON & BRANDT, P.S.C., Covington, Kentucky, for Appellant. Sally J. Berens, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

---

[*]The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

———————————

**OPINION**

———————————

GRIFFIN, Circuit Judge.

Two heads are not always better than one. Petitioner Emond Durea Logan learned as much when he received conflicting advice from his two attorneys while considering whether to accept a plea offer with a ten-year sentencing cap. His counsel of record told him it was a very good plea deal that avoided the high risks of proceeding to trial, and Logan signed the plea agreement. However, his second attorney—retained by Logan's family but not counsel of record—subsequently persuaded Logan to withdraw from the plea agreement. Ultimately, Logan accepted a second plea agreement that did not include a sentencing cap and received a much longer sentence than contemplated by the first agreement. In the district court and now on appeal, Logan claims ineffective assistance of counsel on the basis of his retained attorney's advice. On these facts, the district court held that Logan did not sustain his burden of showing a Sixth Amendment violation. We agree and, therefore, affirm the judgment of the district court.

I.

Logan was a drug courier in a cross-country drug ring from 2004 to 2007. In this role, he routinely transported "loads of cocaine from the Los Angeles, California area to the Detroit, Michigan area, using a tractor-trailer," and returned with the resulting "drug proceeds in the form of United States currency from Michigan to California." In total, Logan transported over 150 kilograms of cocaine from California to Michigan.

Logan was arrested and indicted in California, was transferred to the Western District of Michigan, and pleaded not guilty to charges of conspiracy to distribute cocaine, 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A)(ii), and conspiracy to commit money laundering, 18 U.S.C. §§ 1956(h) and 1957. On October 2, 2009, the district court appointed attorney Richard Zambon to serve as defense counsel.

Shortly thereafter, Zambon received a phone call from Leo Terrell, a California-based attorney. Terrell told Zambon that petitioner's family contacted him about representing petitioner in this case. Zambon met with Logan, who confirmed that his family hired Terrell and that Terrell would be representing him in this case. In late-October 2009, Terrell came to Zambon's office, where the two discussed the case and Zambon gave Terrell the complete discovery packet. Terrell told Zambon that he would soon be entering his appearance on Logan's behalf.

Zambon next met with petitioner on November 2, 2009. Logan reiterated his preference that Terrell represent him, but because Terrell had not yet filed his appearance with the court or paid his admission fee, Zambon was still Logan's attorney of record. So Zambon continued to relay plea offers to Logan, advised him of his options going forward, and reviewed the sentencing guidelines and evidence with him. Zambon met with Logan approximately six more times from November 2009 to January 2010. Although Terrell had not filed an appearance in Logan's case, by this point Logan's father had paid a $100,000 retainer to Terrell and retained him as Logan's counsel.

Terrell finally paid his admission fee to the Western District of Michigan on January 15, 2010, but did not file a motion to substitute as defense counsel until February 4. Zambon again met with petitioner around this time and advised him that he "did not think the court would allow the substitution of attorneys as it appeared that Mr. Terrell had a conflict of interest because of his joint representation of several of [Logan]'s family members who were either potential witnesses or potential co-defendants." Nevertheless, petitioner informed Zambon that he supported Terrell's motion and wanted Zambon off the case. Therefore, Zambon filed a motion to withdraw as counsel based on the deterioration of the attorney-client relationship.

On February 17, 2010, the court denied both Terrell's motion to substitute as counsel and Zambon's motion to withdraw, leaving Zambon as petitioner's only attorney of record. Two days later, Zambon again met with petitioner to discuss a plea offer. This plea offer required petitioner to plead guilty to the conspiracy-to-distribute-cocaine charge in exchange for dismissal of the money-laundering charge and a ten-year sentencing cap. In addition, the prosecution agreed not to bring criminal charges against Logan's wife, brother, and sister-in-law for their

conduct relating to the criminal conspiracy. Zambon explained to Logan that he believed it was a very good plea agreement and, while Zambon testified that he "never tell[s] a client what to do," based upon his familiarity with the case he "had to tell Mr. Logan that this was a very good plea agreement." Petitioner agreed; Zambon and Logan signed the plea offer and the Assistant United States Attorney (AUSA) signed and filed it with the court. Over the weekend, however, Terrell and Logan had four separate phone conversations. Through these conversations, Terrell convinced Logan to reject the plea deal at the change of plea hearing, because Terrell thought he could "beat the case."

The parties appeared for the plea hearing the following Monday. Petitioner rejected the plea offer in open court, claimed that he only signed the plea agreement because he felt "pressured" into doing so, and stated that he was not guilty of any crime. The prosecution stated on the record that if petitioner rejected this plea agreement, it would no longer make any offers with a ten-year sentencing cap. Petitioner persisted and the government terminated its offer.

The government then dismissed the indictment and filed a second, superseding indictment in a multi-defendant companion case. The second superseding indictment again accused petitioner of conspiracy to distribute five kilograms or more of cocaine, 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A)(ii), and conspiracy to commit money laundering, 18 U.S.C. §§ 1956(h) and 1957. At a subsequent hearing, the court disqualified Terrell from serving as co-counsel for some of petitioner's family members/co-defendants, on the basis of a possible conflict of interest, though it permitted Terrell to serve as Logan's counsel in this case, with a local attorney serving as co-counsel. Eventually, based on Terrell's advice, Logan pleaded guilty to the conspiracy-to-distribute-cocaine charge (with the money-laundering charge dismissed by agreement). Unlike the prior offer (and consistent with the government's warning at the previous plea hearing), this plea agreement was without a sentence cap. Subsequently, petitioner was sentenced to thirty-five years' imprisonment, to be followed by five years of supervised release.

On direct appeal, Logan argued only that the government breached his plea agreement by opposing his request for a two-level sentencing reduction for acceptance of responsibility. *United States v. Logan*, 542 F. App'x 484, 489 (6th Cir. 2013). On plain error review, we

affirmed, reasoning that while released on bond Logan funded a marijuana grow operation, encouraged a government witness not to cooperate, and threatened to kill both a co-conspirator and the AUSA assigned to his case. *Id*. at 489–92.

Petitioner filed this § 2255 motion to vacate his sentence, contending that he received ineffective assistance of counsel.  The district court denied the motion, holding that "[t]he right to counsel is not the right to be free from any ineffective assistance of counsel.  Rather, so long as a defendant receives adequate legal assistance, his constitutional rights have been secured."  The district court reasoned that Zambon's effective assistance to Logan counterbalanced Terrell's "abysmal" performance and denied relief.  However, the court granted Logan a certificate of appealability regarding his claim of ineffective assistance of counsel.

Petitioner now appeals.

## II.

We review de novo a district court's decision denying a § 2255 motion. *Downs v. United States*, 879 F.3d 688, 690 (6th Cir. 2018).  We review the district court's findings of fact for clear error. *Guerrero v. United States*, 383 F.3d 409, 414 (6th Cir. 2004).  The ultimate question of whether a defendant received ineffective assistance of counsel is a mixed question of law and fact, which we also review de novo. *United States v. Levenderis*, 806 F.3d 390, 401 (6th Cir. 2015).

## III.

Section 2255 allows a prisoner in federal custody to move the court to set aside or correct his sentence if "the sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or [the sentence] is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  Petitioner bases his motion on the alleged denial of his Sixth Amendment right to counsel.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence."  U.S. Const. amend. VI.  This does not simply

guarantee the mere existence of legal counsel but provides "the right to *effective* counsel—which imposes a baseline requirement of competence." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006) (emphasis added). The Supreme Court has extended this right to critical pre-trial proceedings, including plea negotiations. *Missouri v. Frye*, 566 U.S. 134, 140 (2012). And the Court has made clear that a counsel's erroneous advice to reject a plea offer can establish ineffective assistance, so long as the criminal defendant can satisfy *Strickland*. *Lafler v. Cooper*, 566 U.S. 156, 172–74 (2012).

Under *Strickland*'s two-part framework, a criminal defendant claiming ineffective assistance of counsel during plea negotiations must prove that (1) counsel's performance was deficient, i.e., that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) the deficient performance actually prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The deficient performance prong is "measured against an objective standard of reasonableness under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotation marks omitted) (citations omitted). "To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Frye*, 566 U.S. at 147.

The parties agree that the pertinent considerations for whether petitioner received ineffective assistance of counsel all come from the few days between when Zambon advised Logan to plead guilty, and when Terrell eventually convinced him otherwise, resulting in petitioner rejecting the plea agreement with a sentencing cap. The parties agree Zambon provided effective assistance of counsel; Terrell's performance, however, is a different matter.

The district court stated that "Terrell's shadow representation [of Logan] was certainly 'ineffective' in many senses," but concluded that it did not require the conclusion that Logan's right to effective assistance of counsel was violated. We agree that Terrell's services were deficient. Even beyond his hair-trigger advice during the plea-agreement phase, his conduct was continually questionable throughout the proceedings below. Terrell represented other defendants in the case until he was finally precluded from doing so by the district court, due to some

compelling conflict-of-interest problems. Furthermore, Terrell was not the attorney of record at the time Zambon negotiated the plea agreement because Terrell delayed filing a notice of appearance for over two months—a delay he chalked up to his busyness with other cases and his need to research the law and issues related to Logan's case.[1] But both below and before this court, petitioner has limited his ineffective assistance claim to Terrell's behavior surrounding the plea offer, so we need not consider these other exceedingly questionable acts.

Collectively, then, petitioner received both competent and deficient advice on whether to accept the February 19 plea offer with a ten-year sentencing cap. Such conflicting advice undercuts Logan's claim of ineffective assistance of counsel. In interpreting constitutional text, "we are guided by the principle that '[t]he Constitution was written to be understood by the voters; its words and phrases were used in their normal and ordinary as distinguished from technical meaning.'" *Dist. of Columbia v. Heller*, 554 U.S. 570, 576 (2008) (quoting *United States v. Sprague*, 282 U.S. 716, 731 (1931)). And the Sixth Amendment guarantees all criminal defendants the right to counsel in their defense, U.S. Const. amend. VI, which we have long interpreted as guaranteeing the right to *effective* counsel, *see, e.g.*, *Reece v. Georgia*, 350 U.S. 85, 90 (1955) ("The effective assistance of counsel in such a case is a constitutional requirement . . . ."). This right "embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel." *Johnson v. Zerbst*, 304 U.S. 458, 462–63 (1938). Thus, the Supreme Court has noted that the purpose of the Sixth Amendment's right to counsel is "protecting the unaided layman at critical confrontations with his adversary." *United States v. Gouveia*, 467 U.S. 180, 189 (1984); *see also Frye*, 566 U.S. at 144 ("[C]riminal defendants

---

[1]Additionally, and while not related to his direct representation of Logan, we seriously question Terrell's decision not to participate in the § 2255 proceedings, even after being subpoenaed. When petitioner's new counsel emailed him, requesting that he provide an affidavit in support, he outright refused, responding, "Please do not contact me regarding this matter." When petitioner's counsel responded that it was likely Terrell would be subpoenaed if he did not submit an affidavit, Terrell responded, "I suggest you seek advice regarding any attempt to obtain comments from me regarding my former client. I look forward to your subpoena and will challenge that document." Though he received a subpoena from the U.S. Marshal Service, he never appeared for the hearing. In addition to his woeful representation of Logan, his combative behavior to initial requests for his participation and his complete failure to appear even after being subpoenaed are inexcusable, reflect poorly on the profession, and might be grounds for professional discipline.

require effective counsel during plea negotiations. Anything less might deny a defendant effective representation by counsel at the only stage when legal aid and advice would help him." (internal quotation marks and ellipsis omitted)). But as these recitations have been framed and phrased, they encompass an affirmative right (the right to effective assistance of counsel at critical proceedings), not a negative right (the right to be completely free from ineffective assistance). Because Zambon adequately assisted Logan at the plea-bargain stage, Logan received his Sixth Amendment right to effective assistance of counsel, regardless of Terrell's subsequent, contradictory advice.

While unpublished, and thus not binding on this panel, this Court's decision in *Santosuosso v. United States*, 74 F.3d 1240; 1996 WL 15631 (6th Cir. 1996) (per curiam) (unpublished table decision), is instructive on this issue, and comes to the same conclusion. There, the defendant pleaded guilty to participating in an illegal gambling business upon the advice of his defense counsel that the defendant was highly likely to be convicted at trial and would face an eighteen-month sentence, rather than the three-month sentence offered in the plea deal. *Santosuosso*, 1996 WL 15631, at *1. Around this same time, the defendant received advice from two other lawyers, who were not his attorneys of record and who convinced the defendant to reject the plea deal and hire them to represent him in his criminal proceedings. *Id*. Defendant was ultimately convicted of two counts of perjury at trial and sentenced to twenty-one months in prison. *Id*. at *2. This court denied relief, finding persuasive a Ninth Circuit decision concluding "that '[t]he Sixth Amendment right to effective assistance of counsel . . . does not include the right to receive good advice from every lawyer a criminal defendant consults about his case.'" *Id*. at *3 (quoting *United States v. Martini*, 31 F.3d 781, 782 (9th Cir. 1994) (per curiam) (citation omitted)); *see also Faison v. United States*, 650 F. App'x 881, 888 (6th Cir. 2016) (quoting approvingly from *Martini* and *Santosuosso*).

This reasoning comports with our published caselaw in similar situations. In *Harrison v. Motley*, the defendant received conflicting advice from his attorneys about whether he should take the stand himself and whether the defense should even call witnesses or put on a case in chief. 478 F.3d 750, 755–56 (6th Cir. 2007). We held that the fact that the defendant "was ultimately responsible for deciding whether to testify himself or to call certain defense witnesses

did not render him without the aid of counsel." *Id*. at 756. In other words, when a defendant receives the necessary information to make a call, the fact that the ultimate decision is left to him does not render counsel absent or ineffective.

Here, in a similar vein, Zambon—petitioner's counsel of record at the time—advised Logan about the risks of going to trial; Logan even testified that he signed the plea agreement because he was guilty and was worried about facing a sentence of thirty years or more, meaning that he was aware of the risks of proceeding to trial. Zambon also told Logan that this was a very good plea deal and explained the risks of either accepting or rejecting it. On the other hand, Terrell—who was not petitioner's counsel of record at the time—recommended rejecting the plea and proceeding to trial because he thought he could get Logan off on the charges. And even Terrell advised Logan both that whether to accept the plea offer was ultimately Logan's decision and that the fear of a higher sentence after trial was a valid concern. In short, petitioner received all the information needed to make an informed decision on whether to accept the plea deal from his counsel of record. *Id*.

As the Supreme Court has noted, "[a] defendant . . . has the ultimate authority to determine whether to plead guilty." *Florida v. Nixon*, 543 U.S. 175, 187 (2004) (internal quotation marks omitted); *see also Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003) ("The decision to plead guilty—first, last, and always—rests with the defendant, not his lawyer."). And "[i]f a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler*, 566 U.S. at 168. Logan undoubtedly received as much from Zambon. Because he failed to show that he was denied his Sixth Amendment right to effective assistance of counsel, the district court did not err in denying his motion to vacate his sentence under 28 U.S.C. § 2255. "To hold otherwise would allow defendants represented by multiple lawyers to take two bites at the apple . . . ." *Stoia v. United States*, 109 F.3d 392, 399 (7th Cir. 1997).

And because petitioner relies heavily on *Lafler*, the seminal case on ineffective assistance during plea bargaining, we must note the differences between the two cases. In *Lafler*, the defendant had only one attorney, who told him to reject a favorable plea and proceed to trial because "the prosecution would be unable to establish his intent to murder [the victim] because

[the victim] had been shot below the waist." 566 U.S. at 161. This was legally incorrect, and the defendant was convicted. *Id*. at 161–62. The Court agreed with the lower courts that the defendant had been prejudiced by his counsel's advice. *Id*. at 174. In analyzing the deficient performance prong, the Court merely noted that "deficient performance has been conceded by all parties. The case comes to [the Supreme Court] on that assumption, so there is no need to address this question." *Id*. But on that point the Court also stated that "an erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance." *Id*.

Here, petitioner's counsel of record told him the risks he faced in going to trial, including that he could face more jail time than was offered in the ten-year-capped plea deal. Zambon told petitioner that he could face a sentence in the range of thirty years to life. Terrell's erroneous contrary prediction that there would be ways to get petitioner to "walk"—meaning no additional jail time—is not necessarily deficient performance under *Lafler*. *Id*. Hindsight, as we know, is not the lens through which we grade attorney performance. *See Premo v. Moore*, 562 U.S. 115, 125 (2011) ("Failure to respect the latitude *Strickland* requires can create at least two problems in the plea context. First, the potential for the distortions and imbalance that can inhere in a hindsight perspective may become all too real. The art of negotiation is at least as nuanced as the art of trial advocacy, and it presents questions farther removed from immediate judicial supervision. There are, moreover, special difficulties in evaluating the basis for counsel's judgment: An attorney often has insights borne of past dealings with the same prosecutor or court, and the record at the pretrial stage is never as full as it is after a trial."). That said, we have already noted our agreement with the district court that Terrell's counsel was deficient for numerous reasons. But unlike in *Lafler*, the deficient performance was not all that petitioner received. Logan was also counseled by Zambon, who provided all that the Sixth Amendment requires. In sum, petitioner was given all he needed to make an informed decision on the plea offer from Zambon, his attorney of record, and, under these facts, the counsel he received was sufficient under the Sixth Amendment. *Lafler*, 566 U.S. at 168.

Finally, petitioner also now argues that his claim of ineffective assistance succeeds because Zambon never advised him to take the plea deal and merely told him it was a good one, while Terrell explicitly told him not to take the deal. In other words, he argues that his deficient

attorney explicitly told him not to take the plea deal, whereas his good attorney only advised him that a "very good" plea deal existed. But below, petitioner argued and testified that Zambon gave him good advice—to accept the plea—that he should have followed. Though Zambon testified that he did not directly tell Logan whether to take the plea deal and left the decision up to him, the district court did not clearly err in its factual finding that Zambon advised Logan to take the "very good plea agreement." *See Guerrero*, 383 F.3d at 414.

IV.

We affirm the judgment of the district court.